Michael G. HARR, Appellant,

v.

UNITED STATES of America.

No. 82–1379.

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 14, 1983.
Decided April 19, 1983.

Mark T. McDermott, Washington, D.C., with whom Robert D. Powell and Henry E. Crawford, Washington, D.C., were on the brief, for appellant.

John W. Polk, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., Royce C. Lamberth and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before WALD and GINSBURG, Circuit Judges, and BAZELON, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

Michael G. Harr brought an action against the United States under the Feder-

al Tort Claims Act ("FTCA")[1] for money damages. Harr's claim arises from the Federal Aviation Administration's ("FAA") denial of the medical certificate he needs to qualify as an airline pilot. More specifically, Harr alleges that the FAA negligently asserted an additional ground for denying him medical certification on the eve of his administrative appeal before the National Transportation Safety Board ("NTSB"). Harr now appeals an order of the district court granting the government's motion to dismiss his FTCA claim with prejudice.[2] We conclude that the district court erred by construing Harr's allegations as focusing solely on the actions of the FAA attorney who handled Harr's case on administrative appeal and by ignoring the actions of the FAA's medical staff, who actually applied the certification standards. We also conclude that Harr's allegations, if proved, would establish liability because they involve duties the FAA owes applicants for medical certification, and because the "discretionary function exception" of the FTCA does not preclude Harr's action.[3]

## I. BACKGROUND [4]

Harr is a professional pilot with a commercial airline. As a civilian pilot, he is required to obtain a medical certificate issued by the FAA. Harr held such a certificate until early 1976, when he was involved in a serious accident while flying a private plane. On July 25, 1976, after Harr left the hospital following a lengthy recuperation, he suffered what was diagnosed as a post-traumatic seizure. After a year of additional medical care and supervision, Harr's treating physicians advised him that he was fit to resume flying and Harr reapplied to the FAA for medical certification on September 7, 1977.

On January 13, 1978, the Federal Air Surgeon denied Harr's application for medical certification.[5] The FAA reaffirmed this denial on December 11, 1978. The FAA based its determination on two subsections of the neurologic medical standards: One declares that a successful applicant may not have a history or diagnosis of a disturbance of consciousness without a satisfactory medical explanation, and the other states that an airman may not have a convulsive disorder or neurologic condition that may make him unable to perform his duties safely within the next two years. The language of these two subsections is exactly the same for all three classes of medical certification. See 14 C.F.R. §§ 67.-13(d)(2)(i)(b), .13(d)(2)(ii) (first-class); id. §§ 67.15(d)(2)(i)(b), .15(d)(2)(ii) (second-class); id. §§ 67.17(d)(2)(i)(b), .17(d)(2)(ii) (third-class) (1982).[6]

1. 28 U.S.C. §§ 1346(b), 2671 et seq.

2. *Harr v. United States,* No. 82–3123 (D.D.C. Mar. 17, 1982) [hereinafter District Court Order], *reprinted in* Appendix (App.) at 71–72.

3. 28 U.S.C. § 2680(a) states:
   The provisions of this chapter and section 1346(b) of this title shall not apply to—
   (a) Any claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

4. For a more complete description of the FAA medical certification process, *see Beins v. United States,* 695 F.2d 591, 594 (D.C.Cir.1982). Since this appeal is from the district court's grant of a motion to dismiss, we draw our background facts primarily from Harr's complaint. *See* App. at 4–10.

5. The FAA's medical certification decision is supposed to be "based on [a] medical examina-tion and evaluation of [an applicant's] history and condition." 14 C.F.R. § 67.11 (1982). If the FAA decides that it needs additional medical information or history, it can request it from the applicant. If the applicant declines to provide the information, the FAA may refuse to issue him a certificate. *Id.* § 67.31.

6. The two subsections state that a successful applicant may not have any:
   established medical history or clinical diagnosis of . . . [a] disturbance of consciousness without satisfactory medical explanation of the cause.
   14 C.F.R. § 67.13(d)(2)(i)(b) (first-class); *id.* § 67.15(d)(2)(i)(b) (second-class); *id.* § 67.-17(d)(2)(i)(b) (third-class), *or any*
   other convulsive disorder, disturbance of consciousness, or neurologic condition that the Federal Air Surgeon finds—
   (a) Makes the applicant unable to safely perform the duties or exercise the privileges of the airman certificate that he holds or for which he is applying; or

On February 5, 1979, Harr filed a petition with the NTSB for review of the FAA's denial of medical certification. On March 26, 1979, the FAA answered, arguing once again that Harr was disqualified because of his failure to meet the same two subsections. On August 16, 1979, an NTSB Administrative Law Judge ("ALJ") set the hearing on Harr's certification for Tuesday, October 9, 1979, in Orlando, Florida.

On Thursday, October 4, 1979, only three weekdays prior to the October 9 hearing, the FAA filed a motion with the NTSB to amend its answer to Harr's petition for review. In its motion, the FAA sought to add a third subsection of the neurologic standards, dealing with epilepsy, *see* 14 C.F.R. § 67.13(d)(2)(i)(a) (first-class), *id.* § .15(d)(2)(i)(a) (second-class), *id.* § .17(d)(2)(i)(a) (third-class) (1982), as another basis for denying Harr's certification. This was the first time since Harr had reapplied for certification two years earlier that the FAA raised the epilepsy justification. The FAA's belated discovery and reliance on the epilepsy ground appears to have its origins in a trial preparation meeting on the morning of October 4 between an FAA attorney and the FAA's sole expert witness at Harr's hearing;[7] later that day, the FAA attorney met with and obtained the concurrence of FAA physicians to the additional ground for Harr's disqualification. On October 11, two days *after* the scheduled hearing, the Air Surgeon sent Harr formal written notice of the FAA's final determination of epilepsy as an additional disqualifying factor.

The FAA attorney's motion to amend his answer was dated October 4. However, Harr's counsel did not receive the motion before he left for the hearing, and he did not receive actual notice until October 8, the day before the hearing.[8] On October 9, the ALJ granted the FAA's motion to amend but postponed the hearing to give Harr time to prepare his response. The hearing was reconvened on January 21, 1980, after which the ALJ reversed the FAA's denial of Harr's medical certificate. The FAA appealed the ALJ's decision to the NTSB, which affirmed the ALJ. The FAA then issued Harr an airman medical certificate, and Harr returned to work as a commercial airline pilot.

On December 21, 1981, Harr filed a complaint alleging a right to recover damages, pursuant to the FTCA, for the FAA's breach of its duty to apply its medical certification rules in a careful manner. Harr's complaint focused on the FAA's decision to assert an additional ground for disqualification just prior to the hearing before the ALJ; Harr did not allege negligence in connection with the FAA's decision to assert the two original reasons for his disqualification. This appeal is taken from the district court's order of March 17, 1982, dismissing Harr's action with prejudice.

## II.  ANALYSIS

We face two issues in this case. Accepting Harr's factual allegations as true, as we must on an appeal from an order granting a motion to dismiss, we must ascertain: (1) whether the FAA owed and violated an actionable duty to Harr; and (2) whether the FAA's action is immune from suit because it falls within the "discretionary func-

---

(b) May reasonably be expected, within 2 years after the finding, to make him unable to perform those duties or exercise those privileges;
and the findings are based on the case history and appropriate, qualified, medical judgment relating to the condition involved.
*Id.* § 67.13(d)(2)(ii) (first-class); *id.* § 67.-15(d)(2)(ii) (second-class); *id.* § 67.17(d)(2)(ii) (third-class).

**7.** The FAA's expert witness had written a report on Harr's condition on November 27, 1978, just prior to the FAA's reaffirmation of its

denial of Harr's certification. The expert's report does not mention epilepsy, and the FAA did not recall acquiring any new medical information on Harr between the time of denial and the pre-NTSB hearing preparation meeting. Cassady deposition at 33, 38, 72, 80, *reprinted in* App. at 106, 111, 145, 153.

**8.** The FAA mailed the motion to Harr's counsel on October 4. The FAA telephoned the office of counsel on October 5, but made no further effort to contact Harr's counsel after discovering that he had already departed for Orlando.

tion exception" to the FTCA, *see* 28 U.S.C. § 2680(a). We dealt with related issues recently in *Beins v. United States,* 695 F.2d 591 (D.C.Cir.1982), and we rely in large part on that decision here. This case, however, presents two factual circumstances not present in *Beins:* First, the FAA failed to assert the epilepsy charge until immediately before Harr's NTSB hearing, and second, an FAA attorney was involved in identifying epilepsy as an additional basis for denial.

### A. *The FAA's Duty*

Harr's allegations about the FAA's breach of duty may be summarized as follows:[9] First, the FAA breached a duty to him by adding epilepsy as a justification for denying medical certification because there was no reasonable medical basis for the assertion. Second, even if the FAA had a reasonable medical basis for adding epilepsy as a disqualifying ground, it violated a duty by failing both to discover the epilepsy problem and to inform Harr (through his counsel) of the new ground until just before his administrative hearing. We believe that each of these allegations is sufficient to state a cause of action.

Three factors support our conclusion. First, as we pointed out in *Beins,* the FAA's medical regulations state that an applicant who meets the medical standards is *entitled* to an appropriate medical certificate. 695 F.2d at 602–03 (quoting 14 C.F.R. § 67.11 (1982)) (emphasis in *Beins* ). We also noted in *Beins* that the word entitled reflects the language of 49 U.S.C. § 1422(b), which states that the Administrator of the FAA *shall issue* an airman certificate to a properly qualified and physically able applicant. 695 F.2d at 603 n. 17. Thus, if an applicant

meets the medical standards, the FAA must certify him.

Second, we explained in *Beins* "that § 67.11 imposes a duty on the FAA to base its decision [that an applicant does or does not meet the medical standards] on a medical examination and evaluation of the applicant's history and condition." 695 F.2d at 603. Indeed, the particular neurologic standard at issue here states that a successful applicant cannot have an "established medical history or clinical diagnosis of . . . [e]pilepsy," 14 C.F.R. §§ 67.13(d)(2)(i)(a), .15(d) (2)(i)(a), .17(d)(2)(i)(a) (1982). This clause reemphasizes that the FAA must ground a medical disqualification for epilepsy on a *reasonable evaluation of an applicant's medical history.*

Third, we recognize that a rejected applicant has a right to have the NTSB review the FAA's decision. *See* 49 U.S.C. § 1422(b). The NTSB plays an independent and decisive role in the administrative appeals process: The NTSB is not bound by the FAA's findings of fact, and the NTSB's decision on whether the applicant meets the pertinent regulations and standards binds the FAA. *Id.*

We conclude from the first two factors that the FAA had a duty to issue Harr a medical certificate if he met the FAA's own standards and a related duty to base any disqualification on a reasonable analysis of the medical evidence. If the FAA was negligent in adding the epilepsy charge without the appropriate medical basis, Harr has a right to recover damages caused by the FAA's action. We also conclude—because an applicant has a statutory right to a fair and independent review by the NTSB of an FAA denial—that the FAA

---

**9.** The allegations are based on two key paragraphs of Harr's complaint:

> 32. By amending its charges against Plaintiff to allege application of a new subsection of the medical certification rules a few days before the out-of-town hearing, despite the fact that the FAA had the medical information in its possession for a considerable period prior to the amendment, the FAA breached its duty to apply the rules in a careful manner.

> 33. By amending its charges against Plaintiff to allege application of an additional subsection of the medical certification rules when there was no sufficient factual basis to support application of that additional subsection, the FAA also breached its duty to apply the rules in a careful manner.

Harr's complaint, paragraphs 32, 33, *reprinted in* App. at 9.

cannot unreasonably interpose on the eve of the NTSB hearing an additional disqualifying ground. We cannot permit the FAA to apply its own medical standards in an untimely, seriatim fashion that inordinately protracts the course and increases the expense of the independent review process created by Congress. We hasten to emphasize, however, that we do not address in this case whether the FAA has a duty to set forth a ground for denial of medical certification within a certain period after the pilot applies. The only duty we need to find here is that once the FAA has denied certification for a certain reason, and the applicant has sought NTSB review, the FAA must take all reasonable steps to discover and inform the applicant of any other disqualifying grounds reasonably in advance of the NTSB hearing.

The government seeks to avoid the conclusion that the FAA owed these duties to Harr by asserting that Harr's claim only focuses on the FAA trial attorney's decision to add the epilepsy defense in the NTSB hearing. The FAA trial attorney's adversarial actions, it argues, cannot possibly be limited by a duty toward Harr. The district court, in a note to its order, seemed to accept the government's contention.[10]

■ We believe the government's argument misses the point that the FAA can be liable for negligent actions of its medical certification staff, and that Harr indeed alleged such negligence. The heart of Harr's grievance is that the *FAA medical staff* acted negligently—both by adding epilepsy as a disqualifying ground without a

reasonable medical basis for the assertion, and by failing to discover and inform Harr of the alleged epilepsy ground until immediately before his hearing. We do not regard the alleged wrongful action here as involving the FAA attorney's litigation decision to amend his answer once the medical staff approved the new ground. As the FAA attorney himself recognized when he sought approval from the medical staff before moving to include epilepsy as a basis for disqualification, the FAA medical staff has the duty to make the final evaluation of grounds for denying certification. The FAA's regulations make the locus of this duty clear. *See* 14 C.F.R. §§ 67.25, .27 (1982), *as amended*, 47 Fed.Reg. 16,298, 16,309 (1982). Thus, only the FAA medical staff could have led the FAA, in the words of Harr's complaint, to "breach[ ] its duty to apply the [medical certification] rules in a careful manner." And we read Harr's complaint as addressed sufficiently to the alleged negligence of the FAA physicians who helped the Air Surgeon make the medical certification decision to survive an argument that Harr gave notice only of a claim against the FAA attorney's acts.[11]

In conclusion, we agree with the district court that the alleged facts do not support a claim that the FAA attorney breached a duty by identifying another possible ground for denial; however, the allegations do support a claim that the FAA medical staff breached a duty to Harr by failing to identify and disclose the ground until a few days before the NTSB hearing.

10. The portion of the district court's note that discusses the FAA's duty to Harr states:

The FAA is charged with [the] responsibility of "promot[ing] safety of flight of civil aircraft in air commerce" by issuing regulations governing practices which affect safety. 49 U.S.C. § 1421(a). In meeting this responsibility the FAA must, among other things, certify airmen. 49 U.S.C. § 1422. Thus, the FAA has a duty to the public to insure that every airman "possesses proper qualifications for, and is physically able to perform" his duties. *Id.* Here there is no allegation that the FAA attorney acted in bad faith when he moved to amend the answer and the fact that the Administrative Law Judge

granted the late motion indicates that the motion was not frivolous. Obviously, the attorney's prime duty was to the public, and to hold that he had a duty to the adversary party would create an impossible conflict. Accordingly, the Court concludes he had no actionable duty to the plaintiff and that this case must be dismissed.

District Court Order at 1 n. *, *reprinted in* App. at 71.

11. *See* note 9, *supra.* Other paragraphs of Harr's complaint refer specifically to "[t]he FAA physicians who drafted and caused the denial to be issued." Harr's complaint, paragraphs 20, 21, *reprinted in* App. at 7.

B. *The Discretionary Function Exception*

■ The FAA's second basis for the motion to dismiss was the "discretionary function exception" to the FTCA, *see* 28 U.S.C. § 2680(a). According to this argument, even if Harr alleged an actionable duty, he could not sue the United States because its waiver of sovereign immunity in tort actions contains an exception for the government's performance of discretionary duties or functions. The notation to the district court's order appears to accept the government's argument, but again it focuses only on the FAA attorney's amendment of the answer before the NTSB.[12] We conclude that the duties the FAA owed Harr, as discussed above, are not precluded by the discretionary function exception.

Subsequent to the district court's order, we discussed at some length in *Beins v. United States,* 695 F.2d at 600–05, the applicability of the discretionary function exception to the FAA's medical certification process. We explained that in applying the discretionary function exception, we must examine the specific medical licensing regulation involved to see whether it: "instruct[s] the FAA officials to weigh certain medical abnormalities and [leaves] a range of policy judgment as to whether to grant a license, or whether the officials [are] simply required to match these deficiencies against a clear medical standard." *Id.* at 602. We also pointed out that the FAA's medical standards seem to fall into three categories: standards that leave little or no discretion of any kind to the FAA; standards that require medical judgment but no balancing of competing policies; and standards that require the FAA "to balance a medical

judgment with a calculation of whether the applicant's medical condition permits him to perform his duties safely." *Id.* at 603. Only the last type of standard leaves "the Air Surgeon a range of [discretionary] policy judgment, albeit a narrow one." *Id.* at 603–04 (footnote omitted).

The medical standard at issue here—"[n]o established medical history or clinical diagnosis of ... [e]pilepsy," 14 C.F.R. §§ 67.-13(d)(2)(i)(a), .15(d)(2)(i)(a), .17(d)(2)(i)(a)—falls within the second category of standards, which require medical judgment but not a policy decision. The epilepsy standard requires the FAA to evaluate a medical condition, not to weigh and balance the effect of the condition on the pilot's ability to perform his duties safely. Therefore, we conclude that the FAA's duty to determine, on the basis of the medical record, whether Harr had epilepsy did not involve a discretionary decision within the meaning of 28 U.S.C. § 2680(a). Of course, Harr cannot recover damages simply because the NTSB rejected epilepsy as a basis for denying certification; to establish negligence, Harr must show that the FAA's finding was unreasonable and caused damages.

*Beins* also makes it clear that the discretionary function exception does not cover Harr's second alleged breach of duty—the FAA's failure to take all reasonable steps to discover and inform Harr of grounds for disqualification reasonably in advance of his NTSB appeal. We explained in *Beins* that even where the medical standard ultimately requires a discretionary judgment (*e.g.,* evaluating whether a condition makes an applicant unable to perform duties safely), "substandard medical or administrative con-

12. The portion of the district court's note that discusses the discretionary function exception states in part:

    Additionally, the Court concludes that this case must be dismissed because the attorney's actions in moving to amend falls within the discretionary function exception to the Federal Tort Claims Act (FTCA). 28 U.S.C. § 2680(a). [Citations omitted.] To hold that the attorney subjected the United States to tort liability in filing a motion to amend to

raise an additional issue which might lead to a finding that the plaintiff should not be certified, would seriously handicap the efficient operation of the FAA safety program. In addition, the failure to assert the new argument against certification would not have been a discretionary act and may well have subjected the United States to liability under the FTCA.

District Court Order at 1 n. *, *reprinted in* App. at 71–72.

duct that took place in the course of the FAA's consideration" is not exempt from the FTCA. 695 F.2d at 604–05 (citing *Payton v. United States,* 679 F.2d 475, 482–83 (5th Cir.1982) (en banc)). It seems to us that the FAA medical staff's failure to discover and inform Harr of the epilepsy ground until just before the NTSB appeal falls within this type of nondiscretionary medical or administrative conduct. Certainly, the government has not set forth any argument that this delay represented a conscious, discretionary policy choice that should be protected by 28 U.S.C. § 2680(a). What appears to have happened, if Harr's allegations are proven correct, is that the FAA medical staff did not conduct the initial medical evaluations carefully enough to identify the alleged evidence of epilepsy and to decide whether it provided a ground for denial.[13]

### III. CONCLUSION

For the foregoing reasons, we conclude that the district court should not have granted the government's motion to dismiss Harr's claim. The judgment of the district court is *reversed* and the case *remanded* to the district court for appropriate action in conformity with this opinion.

*It is so ordered.*

---

**13.** The role of the FAA attorney in this case appears to have been one of identifying a possible error made by the FAA medical staff in evaluating Harr's request for certification. The attorney may not and did not on his own add another ground for denial of certification. Only the Air Surgeon and certain members of his staff may make the final decision on denying medical certification. *See* 14 C.F.R. §§ 67.-25, .27 (1982), *as amended,* 47 Fed.Reg. 16,298, 16,309 (1982).