**ART METAL–U.S.A., INC., Plaintiff,**

v.

**UNITED STATES of America,
Defendant.**

Civ. A. No. 81–1688.

United States District Court,
District of Columbia.

Sept. 22, 1983.

Herbert L. Fenster, Washington, D.C., for plaintiff.

Joan M. Bernott, U.S. Dept. of Justice, Civil Division, Washington, D.C., for defendant.

## MEMORANDUM

HAROLD H. GREENE, District Judge.

The government has filed a motion to dismiss which presents a number of questions under the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671–2680. Plaintiff's five-count complaint stems from actions which the General Services Administration took, beginning in 1978, that severed a long-time contractual arrangement whereby plaintiff supplied the government with metal office furniture. Three counts sound in *per se* negligence and intentional interference with prospective economic advantage; one count alleges trade libel or product disparagement; and the final count claims abuse of prosecution by the Inspector General of the GSA. The government maintains that all of the claims are barred by the FTCA because (1) they do not state torts recognized by the District of Columbia, (2) they arise out of torts as to which the United States has declined to waive its sovereign immunity, see 28 U.S.C. § 2680(h), and (3) they are subject to the discretionary function exception to the FTCA, see 28 U.S.C. § 2680(a). It is not necessary to explore the discretionary function issues because the complaint is subject to dismissal on the other grounds cited by the government.

*Counts I, II, IV*

Insofar as Counts I, II, and IV allege tortious interference with prospective economic advantage, they are barred for two reasons. First, 28 U.S.C. § 2680(h) states that the government has not waived immunity with respect to claims "arising out of ... interference with contract rights." Plaintiff attempts to distinguish the tort of interference with future contracts (or interference with prospective economic advantage) from that of interference with present contracts, arguing that the Act bars only the latter. This makes little sense, however, since if it were accepted, it would allow a cause of action against the government for the more speculative injury, while prohibiting it for the more palpable injury that occurs when an existing contract is broken. Moreover, District of Columbia courts consider the tort of interference with prospective advantage to be but a variety of the more general tort of interference with contractual relations. *DeKine v. District of Columbia*, 422 A.2d 981, 988 (D.C.App.1980); *Sullivan v. Heritage Foundation*, 399 A.2d 856, 861 (D.C. App.1979). Thus, under local law, plaintiff's claim "arise[s] out of ... interference with contract rights."

■ Second, the elements of the tort require that the tortfeasor's actions have interfered with contractual relations between plaintiff and a third party. Here, plaintiff claims that agents of the United States interfered with plaintiff's contractual relations with the United States. This is not sufficient. The government's agents are not separate from the government itself for purposes of establishing the three parties necessary to a three-party tort.

■ To the extent that Counts I, II and IV allege that the government acted wrongfully by constructively debarring plaintiff from competing for future contracts, without holding a hearing, in violation of GSA's regulations and arguably in violation of the Constitution,[1] they likewise fail to state a valid tort claim under District of Columbia law. To be sure, District of Columbia courts have found that statutes and regulations may enunciate standards of care that rise to the level of *per se* negligence, see, *e.g.*, *CECO Corp. v. Coleman*, 441 A.2d 940 (D.C.App.1982), but this does not mean that every violation of a statute or regulation that arguably results in economic injury gives rise to a tort cause of action in the District of Columbia. Since District of Columbia courts have not embraced a form of generic tort like the *prima facie* tort recognized by New York courts, it is still necessary in a case brought in the District of Columbia under the FTCA to allege an established cause of action, which plaintiff has not done. Accord, *Frank Dugan t/a The Communications Network v. United States*, No. 81–1635 (E.D.Pa. Nov. 19, 1982), *appeal pending*, No. 83–1027, slip op. at 11; *Baer v. United States*, 511 F.Supp. 94 (N.D.Ohio 1980). But see *Donohue v. United States*, 459 F.Supp. 465, 469 (E.D.Mich.1978). Moreover, it is difficult to read plaintiff's allegations as constituting negligence: he

alleges such knowing malevolence that the claims are more akin to intentional torts than to negligence. The former, of course, are barred by § 2680(h). See, *e.g.*, *Bergman v. United States*, 567 F.Supp. 460 (D.Colo.1983). Finally, violations of the Constitution are not made actionable in tort against the United States by the FTCA. See, *e.g.*, *Birnbaum v. United States*, 588 F.2d 319, 327–28 (2d Cir.1978).

*Count III*

■ Count III alleges that GSA officers "provided false information concerning the quality of goods manufactured by Art Metal to the press on a regular, continuing, and repeated basis" (Complaint ¶ 29) and that the officials "communicated the information in reckless disregard of the truth of the matters asserted." Complaint ¶ 31. Again, section 2680(h) is a full defense for it bars claims "arising out of ... libel [or] slander." Plaintiff's contention that section 2680(h) is not applicable because its claim is one of trade libel or product disparagement is not persuasive. Even as so denominated, the claim is clearly concerned with damage to reputation.[2] It makes no difference that the reputation allegedly damaged is that of a thing—a piece of furniture—rather than that of a person; the claim is still one arising out of libel or slander.

*Count V*

■ This count raises the novel question whether an inspector general is an "investigative or law enforcement officer[ ] of the United States Government." 28 U.S.C. § 2680(h). If so, plaintiff may press his abuse of process claim; if not, it is barred.

The complaint alleges that the Inspector General caused several subpoenas to be

---

1. See *Myers & Myers, Inc. v. United States Postal Service*, 527 F.2d 1252, 1258–59 (2d Cir.1975) (distinguishing refusal to renew a particular contract or set of contracts, which is a discretionary matter, from "a federal agency['s] tak[ing] action to debar a private firm from further business relations with that agency"); *Gonzalez v. Freeman*, 334 F.2d 570, 578 (D.C.Cir.

1964) (stigma associated with disqualification from bidding).

2. Indeed, plaintiff quotes the standard developed in the law of libel in *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) and its progeny.

issued both to Art Metal and to its accounting firm seeking massive quantities of documents, that he subsequently initiated subpoena enforcement actions in federal district court, and that he acted in bad faith and in response to political pressure by members and staff of a subcommittee of the U.S. Senate. The complaint further alleges that at the conclusion of the Inspector General's investigation, the GSA determined that there was insufficient evidence upon which to base administrative debarment or suspension of Art Metal. Count V seeks recovery for the costs of complying with the subpoenas, for the damage the investigation caused its corporate reputation and goodwill, and for various pecuniary losses that the company suffered.

The FTCA defines an investigative or law enforcement officer as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." 28 U.S.C. § 2680(h). Plaintiff argues that an inspector general is such an officer because the Inspector General Act of 1978 empowers inspectors general "to require by subpena the production of all information, documents, reports, answers, records ... and other data and documentary evidence necessary in the performance of the functions assigned by this Act, which subpena, in the case of contumacy or refusal to obey, shall be enforceable by order of any appropriate United States district court." 5 U.S.C. Appendix I, § 6(a)(4).

Plaintiff's exceedingly broad interpretation does not withstand analysis. Until 1974 the FTCA barred any claims for "assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution." In 1974 the Congress amended the Act to allow such suits against investigative or law enforcement officers. The legislative history of the amendment indicates that Congress was concerned with the kind of governmental activity that had occurred in *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), *i.e.*, warrantless searches in violation of the federal "no-knock" statute. The exception

to the exception in the FTCA was designed to "submit the Government to liability whenever its agents act under color of law so as to injure the public through search [sic] and seizures that are conducted without warrants or with warrants issued without probable cause." S.Rep. No. 588, 93rd Cong., 1st Sess. 4 (1973), U.S.Code Cong. & Admin.News 1974, pp. 2789, 2791. The type of governmental behavior present in *Bivens* —the physical exertion of governmental authority directly on the individual in the course of a criminal investigation—is of a different character than the authorizing of subpoenas. Obtaining evidence by subpoena is the antithesis of obtaining it through search and seizure, see *Zurcher v. Stanford Daily*, 436 U.S. 547, 562–63, 98 S.Ct. 1970, 1980, 56 L.Ed.2d 525 (1978), and plaintiff's statement that the inspector general is "empowered by statute to issue subpoenas for the seizure of evidence" amounts to an oxymoron.

The one decision which plaintiff cites to support a broad reading of the definition of a law enforcement officer, *Sami v. United States*, 617 F.2d 755 (D.C.Cir.1979), does not help it, for there the official in question was classified as "criminal investigator" by the United States Civil Service Commission and had power to authorize foreign governments to arrest American citizens for extradition, which is what the official was alleged negligently to have done. *Id.* at 764. The Court of Appeals decided that, since the official was a trained law enforcement officer and routinely dealt with criminal investigations to such an extent that he could order an arrest, his assignment to duties that did not involve "actual participation in making arrests or conducting investigation," *id.*, did not place him outside of the exception to the exception. The facts of this case are very different: if the issuance of a subpoena were to be regarded as a potential "law enforcement abuse," the federal courts would have jurisdiction to look behind every fraud investigation initiated by a governmental agency that did not end with a finding of fraud. This surely was not Congress' intent. Since the

GSA Inspector General is not an investigative or law enforcement officer, Count V must be dismissed.