ART METAL–U.S.A., INC., Appellant

v.

UNITED STATES of America.

No. 83–2243.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 10, 1984.

Decided Feb. 12, 1985.

Thomas Christopher Papson, Washington, D.C., with whom Herbert L. Fenster, Washington, D.C., was on the brief, for appellant.

Joan Mary Bernott, Special Litigation Counsel, U.S. Dept. of Justice, Washington, D.C., with whom Richard K. Willard, Acting Asst. Atty. Gen., and Joseph E. diGenova, U.S. Atty., Washington, D.C., were on the brief, for appellee.

Before TAMM and EDWARDS, Circuit Judges, and WILKEY,* Senior Circuit Judge.

Opinion for the court filed by Circuit Judge TAMM.

TAMM, Circuit Judge:

Appellant Art Metal-U.S.A., Inc. (Art Metal) appeals from the dismissal of its suit under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680 (1982) (FTCA), for damages resulting from its unlawful de facto debarment from government contracting. Art Metal's complaint alleged, *inter alia*, that a series of acts and omissions by employees of the General Services Administration (GSA) constituted negligence per se, interference with prospective advantage, and injurious falsehood. United States District Court Judge Harold H. Greene granted the government's motion to dismiss, holding that the negligence per se counts failed to state a valid tort claim under District of Columbia law, and that the interference with prospective advantage and injurious falsehood claims were barred under the FTCA. *Art Metal-U.S.A., Inc. v. United States,* 577 F.Supp. 182 (D.D.C.1983). For the reasons set forth below, we affirm the district court.

* Senior Circuit Judge Wilkey did not participate in the disposition of this case.

## I. BACKGROUND

Art Metal is a manufacturer of metal office furniture. The vast majority of the company's business is supplying office furniture products to the federal government through contracts with GSA. At the time of the events leading to this action, Art Metal was the government's largest supplier of metal office furniture.

During the summer of 1978, a series of newspaper articles appeared in Washington, D.C., and elsewhere accusing the company of a variety of serious misdeeds and improprieties in its contractual relations with GSA. Among the named and unnamed sources quoted in the articles were GSA employees and officials. The allegations included charges concerning Art Metal's alleged failure to meet GSA specifications, inferior products, and possible abuses in contract dealings with GSA. In response to both the public allegations and inquiries from a Senate subcommittee, GSA abruptly ceased doing business with Art Metal by refusing to award several contracts on which Art Metal was the low bidder. In effect, GSA constructively debarred Art Metal without initiating any of the formal debarment or suspension procedures required by federal procurement regulations.

Art Metal immediately sought and obtained injunctive relief in the United States District Court for the District of Columbia. Judge Harold Greene found that GSA's actions against Art Metal were taken for public relations reasons and were without any substantiated evidentiary basis. In issuing a temporary injunction, the district court concluded that GSA's actions constituted an unlawful de facto debarment in clear violation of the agency's procurement regulations. *Art Metal-U.S.A., Inc. v. Solomon*, 473 F.Supp. 1 (D.D.C.1978). In two subsequent actions, the district court entered a permanent injunction and an order awarding Art Metal three pending contracts based on GSA's violation of the injunction. *See* Brief for Appellant, addendum at 16, 26.

Following denial of its administrative tort claim, Art Metal brought this action under the FTCA, alleging that the GSA officials' acts and omissions constituted negligence, interference with prospective advantage, and injurious falsehood.[1] Judge Greene granted the government's motion to dismiss and Art Metal appeals. We address three issues in this appeal: (1) whether interference with prospective advantage is barred as a claim "arising out of ... interference with contract rights," 28 U.S.C. § 2680(h); (2) whether injurious falsehood is barred as a "claim arising out of ... libel [or] slander," *id.;* and (3) whether the GSA officials' violations of federal debarment regulations constituted a tort cognizable under the FTCA.[2]

## II. DISCUSSION

### A. *Claims Arising Out of the § 2680(h) Exceptions*

1. Interference With Prospective Advantage

Art Metal alleged in Counts I, II, and IV of its complaint that GSA officials interfered with its prospective economic advantage by failing to comply with procedural requirements set forth in the debarment regulations, failing to award Art Metal contracts to which it was entitled, cancelling and delaying other contracts, and suspending all business with Art Metal. The district court held that those claims were

---

1. Art Metal's complaint also raised a constitutional claim based on the violation of its right to procedural due process, Count I, ¶ 8, Joint Appendix (J.A.) at 5, and an abuse of process claim, Count V, J.A. at 14–17. Art Metal does not appeal the dismissal of those claims.

2. The government also argues that Art Metal's claims are barred by the discretionary function exception, which exempts the United States from liability for claims "based upon the exercise or performance or the failure to perform a discretionary function or duty ... whether or not the discretion involved be abused." 28 U.S.C. § 2680(a) (1982). Like the district court, we find it unnecessary to reach this issue in light of our disposition of the remaining issues.

barred under section 2680(h)[3] of the FTCA as "claims arising out of ... interference with contract rights." 28 U.S.C. § 2680(h).[4] Art Metal argues that the district court erred by failing to recognize that interference with prospective advantage is a distinct common law tort and therefore not barred by the interference with contract rights exception.

As the Supreme Court recently noted, our task in construing the exceptions set forth in section 2680(h) is "to identify 'those circumstances which are within the words and reason of the exception'—no less and no more." *Kosak v. United States*, — U.S. —, 104 S.Ct. 1519, 1523 n. 9, 79 L.Ed.2d 860 (1984) (quoting *Dalehite v. United States*, 346 U.S. 15, 31, 73 S.Ct. 956, 965, 97 L.Ed. 1427 (1953)). We are guided in this effort by the Court's analysis in *Block v. Neal*, 460 U.S. 289, 103 S.Ct. 1089, 75 L.Ed.2d 67 (1983). In that case, plaintiff Neal received a loan from the Farmers Home Administration (FmHA) to finance the construction of a new home. Regulations required the FmHA to provide technical assistance to the borrower, to review the construction plans and the contract, and to make inspections. After moving into the house, Neal discovered several defects and eventually asked the FmHA to pay to correct them. Upon its refusal, she sued under the FTCA alleging that the defects were partly attributable to FmHA officials' negligence in inspecting and supervising construction of the house. The issue before the Supreme Court was whether the action was barred under section 2680(h) as a "claim arising out of ... misrepresentation."

In holding that Neal's claims were not barred by section 2680(h), the Court distinguished its earlier holding in *United States v. Neustadt*, 366 U.S. 696, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961), a case involving a pre-purchase inspection and appraisal of a home by the Federal Housing Administration. The Court explained that the "gravamen of the action against the Government in *Neustadt* was that the plaintiff was misled by [the appraisal] prepared by the Government. Neustadt alleged no injury that he would have suffered independently of this reliance on the erroneous appraisal." 460 U.S. at 296, 103 S.Ct. at 1093. In contrast, the Court found that the government's misstatements were not essential to Neal's claim. In so finding, the Court focused on the government's duty, stating that its duty to use due care in supervising and inspecting construction "is distinct from any duty to use due care in communicating information to respondent." 460 U.S. at 297, 103 S.Ct. at 1094. Because Neal sought to recover for breach of duties *distinct* from duties forming the basis for a claim barred by section 2680(h) (misrepresentation), her claim was not barred.

Unlike Neal, Art Metal seeks to recover for the breach of duties identical to those underlying a barred claim. The duty that the GSA officials allegedly breached is the duty not to interfere with Art Metal's economic relationship with third parties. That duty is the same as the duty underlying a claim for interference with contract rights; the claims are distinguished only because the plaintiff's rights or expectancies under the latter are secured by an existing contract. *See* Restatement (Second) of Torts § 766 comment b (1979) ("[T]here is a gen-

---

**3.** 28 U.S.C. § 2680(h) (1982) retains sovereign immunity for "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights."

**4.** The district court also held that Art Metal failed to state a claim for relief since the interference with prospective advantage tort requires that the tortfeasor's actions have interfered with economic relations between the plaintiff and a third party. 577 F.Supp. at 184. Art Metal

argues that it properly alleged interference with economic relations between itself and third parties such as creditors and other buyers. Construing Art Metal's complaint in its favor, as we must on appeal from a 12(b) dismissal, *see Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir.1979), we accept that argument.

Art Metal also argues that the United States and its employees are different parties for purposes of the prospective advantage claims. We have considered that argument and find it meritless.

eral duty not to interfere intentionally with another's reasonable business expectancies of trade with third persons, whether or not they are secured by contract, unless the interference is not improper under the circumstances."). To hold that interference with prospective advantage does not arise out of interference with contract rights under section 2680(h) would subject the government to liability if its employees interfered with the plaintiff's mere expectation of entering a contract, but not if they interfered with a contract already in existence. Such a result would be illogical and contrary to the " 'words and reason of the exception.' " *Kosak v. United States*, — U.S. ——, 104 S.Ct. 1519, 1523 n. 9, 79 L.Ed.2d 860 (1984) (citation omitted). *See* 2 L. Jayson, *Handling Federal Tort Claims* § 260.06 at 13–105 (1984). We therefore hold, as has nearly every court that has addressed this issue,[5] that Art Metal's claims for interference with prospective advantage are barred as claims arising out of interference with contract rights.

2. Injurious Falsehood

■ Art Metal alleged in Count III of its complaint that GSA officials "provided false information concerning the quality of goods manufactured by Art Metal to the press on a regular, continuing, and repeated basis," and as a result, Art Metal's "standing, reputation, prestige, and goodwill as a manufacturer of quality metal office furniture has been ruined and destroyed with consequent injury to its business and substantial loss of sales." Joint Appendix (J.A.) at 11, 12. The district court dismissed the count as constituting a claim arising out of libel or slander. 577 F.Supp. at 184. Art Metal contends that the allegations state a claim for injurious falsehood,[6] a distinct tort, and therefore do not arise out of libel or slander. It argues that the interest protected by injurious falsehood is not its corporate reputation but rather its pecuniary interest in its products.

■ Although distinctions exist at common law between actions for injurious falsehood and defamation,[7] the torts have always been very closely related. *See* Restatement (Second) of Torts § 623A comment g (1977) ("The action for injurious falsehood is obviously similar in many respects to the action for defamation."); *id.* § 624 comment a ("[T]he decisions went upon an analogy to the kind of oral defamation of the person that is actionable only upon proof of special harm."). *See also Acoustical Manufacturing Co. v. Audio Times, Inc.*, 3 Media L.Rep. 2057, 2064 (D.C.Super.Ct.1977) ("The cause of action based upon 'injurious falsehood' is closely

---

5. *See Small v. United States*, 333 F.2d 702 (3d Cir.1964); *Dupree v. United States*, 264 F.2d 140 (3d Cir.), *cert. denied*, 361 U.S. 823, 80 S.Ct. 69, 4 L.Ed.2d 67 (1959); *Duncan v. United States*, 355 F.Supp. 1167 (D.D.C.1973); *Taxay v. United States*, 345 F.Supp. 1284 (D.D.C.1972), *aff'd without opinion*, 487 F.2d 1214 (D.C.Cir.1973); *Shapiro v. United States*, 566 F.Supp. 886 (E.D. Pa.1983); *Moessmer v. United States*, 569 F.Supp. 782 (E.D.Mo.1983); *Fletcher v. Veterans Administration*, 103 F.Supp. 654 (E.D.Mich. 1952). *But see Colorado Insurance Group, Inc. v. United States*, 216 F.Supp. 787 (D.Col.1963); *Builders Corp. v. United States*, 259 F.2d 766 (9th Cir.1958).

6. Injurious falsehood is also known as "disparagement of property," "slander of goods," and "trade libel." The tort developed in the latter part of the sixteenth century in England as an action for "slander of title." *See* W. Prosser, *The Law of Torts* § 128 (5th ed. 1984); Note, *Injurious Falsehood—An Expanding Tort*, 33 Geo.L.J. 213, 216 (1945). It protects against false statements that disparage the plaintiff's interest in, or the quality of the plaintiff's land, chattels, or intangibles. Restatement (Second) of Torts § 623A comment a (1977). To state a claim, the plaintiff must allege pecuniary harm resulting from the defendant's unprivileged publication of false statements, with knowledge or reckless disregard of the falsity, concerning the plaintiff's property or product. *Golden Palace, Inc. v. National Broadcasting Co.*, 386 F.Supp. 107, 109 (D.D.C.1974), *aff'd without opinion*, 530 F.2d 1094 (D.C.Cir.1976); *Systems Operations, Inc. v. Scientific Games Development Corp.*, 555 F.2d 1131, 1141 (3d Cir.1977).

7. *See generally* W. Prosser, *The Law of Torts* § 128 (5th ed. 1984); Restatement (Second) of Torts § 623A comment g (1977); Hibschman, *Defamation or Disparagement*, 24 Minn.L.Rev. 625 (1940); Note, *Corporate Defamation and Product Disparagement: Narrowing the Analogy to Personal Defamation*, 75 Colum.L.Rev. 963 (1975).

related to traditional defamation."). Moreover, changes in the law of defamation produced by first amendment decisions have further minimized the common law distinctions between the torts. *See* W. Prosser, *The Law of Torts* § 128 (5th ed. 1984); Restatement (Second) of Torts § 623A comment c (1977); Note, *Defamation and the First Amendment in the Corporate Context*, 46 Alb.L.Rev. 603 (1982). The primary difference between injurious falsehood and defamation is the requirement in an injurious falsehood action of pecuniary harm. Restatement (Second) of Torts § 623A comment g (1977); Note, *Corporate Defamation and Product Disparagement: Narrowing the Analogy to Personal Defamation*, 75 Colum.L.Rev. 963, 969 (1975). Even this distinction is negligible, however; a corporation suing for defamation, for example, may only recover actual damages in the form of lost profits. *Martin Marietta Corp. v. Evening Star Newspaper Co.*, 417 F.Supp. 947, 955 (D.D.C.1976). Art Metal's argument, therefore, is based on an illusory distinction between its interest in its reputation (which would be vindicated by a defamation action showing lost profits) and its pecuniary interest in its products (which would be vindicated by an injurious falsehood action requiring pecuniary harm).

■ To isolate this technical and esoteric distinction to hold that injurious falsehood does not arise out of libel or slander would contradict the words and reason of the section 2680(h) exceptions. In short, we conclude that "the fairest interpretation of [section 2680(h)] is the one that first springs to mind," *Kosak*, 104 S.Ct. at 1524: claims for "injurious falsehood," "disparagement of property," "slander of goods," or "trade libel" are "claims arising out of ... libel [or] slander." 28 U.S.C. § 2680(h).[8] We therefore affirm the dismissal of Art Metal's injurious falsehood claims.

### B. *The Local Law Requirement*

■ Having thus held that section 2680(h) bars Art Metal's claims for interference with prospective advantage and injurious falsehood, we now address Art Metal's argument that the GSA officials' violations of federal procurement regulations constituted negligence or negligence per se cognizable under the FTCA. The district court dismissed Art Metal's claims primarily [9] on the ground that they failed to allege an "established cause of action" under District of Columbia law.[10] 577 F.Supp. at 184. Art Metal contends that "[s]tandards of conduct embodied in federal statutes and regulations frequently have been found to impose tort duties of care and have been used to determine whether the acts or omissions of a federal employee are actionable as negligence (or negligence per se) as a matter of local law under the FTCA." Brief for Appellant at 23.

---

8. We realize that distinctions exist between injurious falsehood and defamation. We also acknowledge that in some contexts those distinctions may be relevant. In this case, we hold only that the distinctions are inapposite in determining whether injurious falsehood, trade libel, slander of goods, or disparagement of property are claims arising out of libel or slander under the FTCA.

9. The district court also concluded that Art Metal's complaint alleged intentional rather than negligent conduct. 577 F.Supp. at 184. It then incorrectly suggested that all intentional torts are barred by section 2680(h). *See Black v. Sheraton Corp.*, 564 F.2d 531, 540–41 (D.C.Cir. 1977). We assume for purposes of our discussion that Art Metal's complaint properly alleged negligent conduct.

10. Subject to the limitations and exceptions set forth therein, the FTCA renders the United States liable in tort in accordance with local law. Section 1346(b) authorizes suits against the United States for damages

for injury or loss of property ... caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, *under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.*

28 U.S.C. § 1346(b) (1982) (emphasis added). Section 2674 further provides that the United States shall be liable with respect to tort claims "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674 (1982).

As we discuss below, Art Metal's argument is lacking in one vital respect: by basing its negligence claim entirely on violation of federal duties, it fails to consider that the FTCA waives the immunity of the United States only to the extent that a private person in like circumstances could be found liable in tort under local law. It is true that negligent performance of (or failure to perform) duties embodied in federal statutes and regulations may give rise to a claim under the FTCA, but *only* if there are analogous duties under local tort law.

To understand our analysis, it is helpful to set forth a summary of Art Metal's negligence argument. It first points out that in the District of Columbia, as elsewhere, the elements of a cause of action for negligence are duty, breach, causation, and damages. Next, Art Metal contends that the GSA debarment regulations impose specific duties on GSA officials. The officials breached those duties by violating the clear requirements of the regulations, thereby causing Art Metal to suffer damages. This, Art Metal argues, constituted negligence cognizable under the law of the District of Columbia. Finally, since the regulations violated were designed to protect persons in Art Metal's position against the type of harm that Art Metal suffered, violation of the regulations constitutes negligence per se under District of Columbia law. *See, e.g., Ceco Corp. v. Coleman,* 441 A.2d 940, 945 (D.C.Ct.App.1982). Thus, Art Metal argues, GSA officials were negligent per se and liable under the FTCA.

■ We begin our analysis with the well-established principle that the violation of a federal statute or regulation by government officials does not of itself create a cause of action under the FTCA. *See Canadian Transport Co. v. United States,* 663 F.2d 1081, 1091 (D.C.Cir.1980) ("Not every violation by the government of its

regulations will give rise to an action under the Tort Claims Act."). *See also Sellfors v. United States,* 697 F.2d 1362, 1365–67 (11th Cir.1983) (violation of a federal regulation does not automatically invoke state law principles of negligence per se), *cert. denied,* —— U.S. ——, 104 S.Ct. 3571, 82 L.Ed.2d 870 (1984); *Schindler v. United States,* 661 F.2d 552, 560 (6th Cir.1981) ("usually the federal regulatory statute is not the source of a private right of action"); *United Scottish Insurance Co. v. United States,* 614 F.2d 188, 194 n. 4 (9th Cir.1979) ("[T]he existence of a federal statutory duty does not of itself create a duty to be vindicated by the Act."), *aff'd after remand,* 692 F.2d 1209 (9th Cir.1982), *rev'd on other grounds,* —— U.S. ——, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984);[11] *Zabala Clemente v. United States,* 567 F.2d 1140, 1149 (1st Cir.1977) ("[E]ven where specific behavior of federal employees is required by federal statute, liability to the beneficiaries of that statute may not be founded on the Federal Tort Claims Act if state law recognizes no comparable private liability."), *cert. denied,* 435 U.S. 1006, 98 S.Ct. 1876, 56 L.Ed.2d 388 (1978); *United States v. Smith,* 324 F.2d 622, 624–25 (5th Cir. 1963) (The FTCA "simply cannot apply where the claimed negligence arises out of the failure of the United States to carry out a statutory duty in the conduct of its own affairs."); *Blessing v. United States,* 447 F.Supp. 1160, 1186 n. 37 (E.D.Pa.1978) ("[P]laintiffs may not base their claims on alleged breaches of a duty arising solely out of a federal law when there is no corresponding duty under state tort law."). *See generally* 1 L. Jayson, *Handling Federal Tort Claims* §§ 214.02[3], [4] at 9–65 to 9–74.3 (1984). This is because the FTCA, by its terms, does not create new causes of action; rather, it makes the United States liable in accordance with applicable local tort law. *Birnbaum v. United*

---

**11.** The Supreme Court held that the claim in *United Scottish Insurance* was barred under 28 U.S.C. § 2680(a), the discretionary function exception. In doing so, however, the Court explicitly stated that it would not reach issues under 28 U.S.C. §§ 1346(b) and 2674 (the local law

requirement). 104 S.Ct. at 2766 n. 12. Judge Wallace's cogent and well-reasoned analysis for the Ninth Circuit of the relationship between violations of duties set forth in federal law and state negligence law is not affected by the Supreme Court's reversal. *See* 614 F.2d at 192–96.

*States,* 588 F.2d 319, 327–28 (2d Cir.1978). Duties set forth in *federal law* do not, therefore, automatically create duties cognizable under *local tort law.* The pertinent inquiry is whether the duties set forth in the federal law are analogous to those imposed under local tort law. *See Indian Towing Co. v. United States,* 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955); *Rayonier, Inc. v. United States,* 352 U.S. 315, 77 S.Ct. 374, 1 L.Ed.2d 354 (1957).

█ Contrary to Art Metal's suggestions, two recent decisions by this court, *Harr v. United States,* 705 F.2d 500 (D.C. Cir.1983), and *Beins v. United States,* 695 F.2d 591 (D.C.Cir.1982), do not assist us in resolving the issues raised in this case. Here we squarely address the relationship between a violation of federal regulations and a claim of negligence under local law. In neither *Beins* nor *Harr* did the court mention the particular local tort law duty that was allegedly breached by the violation of federal regulations.

In *Beins,* the court found that the district court properly dismissed a FTCA claim because the plaintiff had failed to prove that federal regulations had in fact been violated. 695 F.2d at 608. In *Harr,* the court held that the plaintiff's allegations that the Federal Aviation Administration violated its own regulations stated a claim under the FTCA. 705 F.2d at 504. We recognize that dicta in *Beins* and the holding in *Harr* imply that the violation of the federal regulations in those cases presented claims cognizable under local tort law. Since the relationship between the federal regulations and the local law tort was not discussed, however, *Harr* and *Beins* shed no light on the determination of

whether the acknowledged breach of the federal regulations in *this* case is a tort cognizable under District of Columbia law. To find that *Harr* and *Beins* control this case, therefore, would be tantamount to holding that a violation of a federal regulation automatically triggers liability under the FTCA. Such a proposition would not only do violence to our prior case law, *see Canadian Transport Co. v. United States,* 663 F.2d 1081, 1091 (D.C.Cir.1980); *Jayvee Brand, Inc. v. United States,* 721 F.2d 385, 392 (D.C.Cir.1983), but also contradict express congressional intent to make the government liable "if a private person would be liable to the claimant *in accordance with the law of the place where the act or omission occurred.*" 28 U.S.C. § 1346(b) (emphasis added).

That regulations impose particular duties on government officials is therefore not controlling. The regulations may nevertheless be important in determining whether the government may be liable for negligence under the FTCA. First, the regulations may provide evidence that the government has assumed duties analogous to those recognized by local tort law.[12] In *Schindler v. United States,* 661 F.2d 552 (6th Cir.1981), for example, a victim paralyzed from use of a polio vaccine sued the United States under the FTCA claiming that government officials negligently failed to observe requirements set forth in applicable licensing regulations. The Sixth Circuit reversed the district court's dismissal of the suit and instructed the district court on remand to examine the regulations and the government's conduct to determine whether the government had assumed

---

**12.** The government by its conduct, of course, may also assume duties analogous to those imposed under local tort law, independent of duties embodied in federal statutes or regulations. The Coast Guard, for example, in operating a lighthouse assumed good samaritan duties under local tort law, *Indian Towing,* 350 U.S. at 64–65, 76 S.Ct. at 124–25, as did the Farmers Home Administration in inspecting new homes, *Block v. Neal,* 460 U.S. at 293, 294 n. 3, 103 S.Ct. at 1092, 1093 n. 3. Similarly, in the regular course of its business, the government may vio-

late local tort law duties. The United States may be liable, for example, when its employees carelessly drive automobiles, *see, e.g., Brooks v. United States,* 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200 (1949), when its doctors are negligent under state malpractice law, *see, e.g., United States v. Brown,* 348 U.S. 110, 113, 75 S.Ct. 141, 143, 99 L.Ed. 139 (1954), or when CIA employees invade plaintiffs' common law right to privacy by opening their mail, *see, e.g., Birnbaum v. United States,* 588 F.2d 319, 323–26 (2d Cir.1978).

duties as a "good samaritan"[13] under Michigan law. *Id.* at 562. *See also Alexander v. United States,* 605 F.2d 828, 832–33 (5th Cir.1979) (assessing contract and regulations to determine the duties of the government).

If the pertinent regulations are found to have imposed a duty analogous to a local tort law duty, the regulations also may provide the standard of care against which the government's conduct should be assessed.[14] *See Canadian Transport,* 663 F.2d at 1091 (breach of tort duty "may be proven in an action against the United States by reference to standards applicable to federal employees"); *Swoboda v. United States,* 662 F.2d 326, 330 (5th Cir.1981) (conduct of FAA air controllers can be assessed with reference to FAA manuals), *cert. denied,* 457 U.S. 1134, 102 S.Ct. 2961, 73 L.Ed.2d 1351 (1982). Moreover, depending on the jurisdiction and the law violated, the latter inquiry may result in the conclusion that violation of the relevant law constituted negligence per se. *Schindler,* 661 F.2d at 561.[15]

▮ The correct analysis, then, is to ask whether a cause of action exists under District of Columbia law for the injuries Art Metal alleges. *See Carlson v. Green,* 446 U.S. 14, 23, 100 S.Ct. 1468, 1474, 64 L.Ed.2d 15 (1980) ("[A]n action under FTCA exists only if the State in which the alleged misconduct occurred would permit a cause of action for that misconduct to go forward."). This case is essentially a dispute between a buyer and seller of goods. The seller alleges that the buyer wronged it by (1) refusing to do business and cancelling a contract, J.A. at 5, 8; (2) terminating future business relations without notice or an opportunity for a hearing, J.A. at 5; (3) interfering with prospective business relations, J.A. at 5, 9, 13; (4) delaying contract awards by falsely representing that additional time was required, J.A. at 8; (5)

---

13. FTCA claims involving inspection and certification activities commonly rely, as did *Schindler,* on the good samaritan doctrine as enunciated in RESTATEMENT (SECOND) OF TORTS §§ 323, 324A (1965). *See, e.g., Loge v. United States,* 662 F.2d 1268 (8th Cir.1981), *cert. denied,* 456 U.S. 944, 102 S.Ct. 2009, 72 L.Ed.2d 466 (1982); *Raymer v. United States,* 660 F.2d 1136 (6th Cir. 1981), *cert. denied,* 456 U.S. 944, 102 S.Ct. 2009, 72 L.Ed.2d 466 (1982). Analogous local law duties also may be found in a variety of other situations. *See, e.g., Downs v. United States,* 522 F.2d 990 (6th Cir.1975) (duty under Florida law not to expose others to an unreasonable risk of harm); *Lutz v. United States,* 685 F.2d 1178 (9th Cir.1982) (duty under Montana law of dog owner to control his pet); *Bilderback v. United States,* 558 F.Supp. 903 (D.Or.1982) (duty under Oregon law of stock owner to confine his animals).

14. This is not to suggest that the standard of care embodied in the federal law is conclusive. Even if the government can show that it complied with the applicable law, it still may be found negligent. *Cf. Rudelson v. United States,* 602 F.2d 1326, 1329 (9th Cir.1979); *United States v. Haskin,* 395 F.2d 503, 506 (10th Cir. 1968).

15. Unfortunately, courts do not always distinguish between "federal legal duties" on the one hand and, on the other hand, the use of federal statutes and regulations to prove either that the government has assumed duties under local tort law or that it has breached those duties under principles of negligence per se. *See United Scottish Insurance,* 614 F.2d at 197 and n. 9.

In *Donohue v. United States,* 459 F.Supp. 465 (E.D.Mich.1978), the district court held that violations of debarment and suspension regulations much like those at issue in the present case constituted negligence per se under both Arizona and District of Columbia law. *Id.* at 468. The court in *Donohue* failed to consider the FTCA's local law requirement beyond a cursory and simplistic reliance on general principles of negligence and negligence per se. The duty relied on in *Donohue* derived solely from federal regulations. Art Metal invites us to make a similar mistake; we decline to do so.

Dicta in *Myers & Myers, Inc. v. United States Postal Service,* 527 F.2d 1252 (2d Cir.1975), demonstrates similarly flawed analysis. In that case, the Second Circuit found that the Postal Service had de facto debarred a contract carrier in violation of its due process rights and applicable debarment regulations. In remanding the case for a determination of whether the unlawful debarment constituted tortious conduct under state law, the court suggested that "the failure of the Postal Service to comply with its own regulations ... may be treated under state law as negligence per se." *Id.* at 1261. The court explicitly noted, however, that the issue had not been briefed by the parties. The court merely concluded that by construing the pleadings most favorably to the plaintiff, it did not consider frivolous the argument that blacklisting without a hearing is tortious conduct.

violating a court injunction, J.A. at 9; and (6) disparaging the quality of the seller's products, J.A. at 11. Apart from possible claims arising out of defamation, misrepresentation, or contract, which, as we held above, are excepted under section 2680(h),[16] these allegations do not state a cause of action under District of Columbia tort law.

It is true that GSA officials failed to give Art Metal the process due it under the procurement regulations. Because the regulations do not embody duties recognized under District of Columbia tort law, however, they do not assist Art Metal in this FTCA action. An examination of the regulations indicates that they essentially impose duties on GSA officials to deal fairly with government contractors. Moreover, the "fairness duties" are required of the government *as a government* under the due process clause of the United States Constitution. *See Gonzalez v. Freeman,* 334 F.2d 570 (D.C.Cir.1964). As Art Metal itself recognizes, the regulations are "designed to protect contractors' due process rights, liberty interests, and economic interests from an arbitrary, capricious, unfair,

or incorrect debarment." Brief for Appellant at 33. These constitutional rights are guaranteed under *federal law,* not local law. Thus an alleged violation of these rights is not remediable under the FTCA. *Brown v. United States,* 653 F.2d 196 (5th Cir.1981), *cert. denied,* 456 U.S. 925, 102 S.Ct. 1920, 72 L.Ed.2d 440 (1982). The FTCA's local law requirement may not be circumvented merely by casting the alleged constitutional wrong as negligence.

### III. CONCLUSION

For the foregoing reasons, the district court's dismissal of Art Metal's complaint for failure to state a claim under the FTCA is

*Affirmed.*

---

16. *See Johnson v. United States,* 547 F.2d 688, 691–92 (D.C.Cir.1976) ("[S]urely a litigant cannot circumvent the [FTCA] by the simple expedient of drafting in terms of negligence a complaint that in reality is a claim as to which the United States remains immunized.").