**DELTA SAVINGS BANK, a California Savings Association; Young I. Kim, an individual and shareholder, Plaintiffs–Appellants,**

v.

**UNITED STATES of America; David Henry; Jennifer Jones, Defendants–Appellees.**

No. 98–56775.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 10, 2000

Filed July 12, 2001

---

**7.** We also deny Appellees' motion to strike.

Timothy J. Gorry, Gorry & Meyer, Los Angeles, California, for the plaintiffs-appellants.

Sushma Soni, United States Department of Justice Civil Division; Mary Hampton Mason, Civil Division; Richard Montague, Esq., Civil Division; Mark B. Sterns, Civil Division, Washington, D.C., for the defendants-appellees.

Before: B. FLETCHER, THOMAS, and WARDLAW, Circuit Judges.

BETTY B. FLETCHER, Circuit Judge:

Plaintiffs-appellants Delta Savings Bank ("Delta") and Young Il Kim ("Kim") appeal two of the district court's orders granting a motion for partial summary judgment and a motion for summary judgment in favor of the defendant-appellee United States. These rulings dispose of all issues and all parties. We affirm in part and reverse in part. Because we affirm the district court on grounds that dispose entirely of the case, we need not remand for further proceedings.

*I.*

This case is about a state licensed savings bank, Delta, that fell under the scrutiny and eventually the control of various agencies of the United States. On September 15, 1989, several individuals of Asian ancestry invested approximately $2.6 Million in Delta and took over management of the institution. Kim invested nearly $500,000 and assumed the presidency of the bank. At the time he did so, the bank was already failing and under investigation by the Office of Thrift Supervision ("OTS"). According to plaintiffs, the bank's condition improved almost immediately, but the bank nonetheless came under increased scrutiny by the federal regulators. Plaintiffs allege that the increased scrutiny was due to a conspiracy among two OTS employees, defendants Henry and Jones, and a Delta employee, Miller, who once worked for OTS. Supposedly, these three were motivated by their racial

bias against the Asian ancestry of Delta's management. This is the central theory behind plaintiffs' causes of action. Delta requested that both the Western Regional Director of the Office of the Inspector General and the California Department of Savings and Loan investigate the OTS. Both agencies began investigations into the claims of discrimination.

On May 29, 1991, Delta's board of directors authorized "any and all action necessary to file Civil Litigation against any and all parties including the OTS, ... J. Jones, A. Miller and D. Henry." On November 8, 1991, the OTS served Delta with notice that the Resolution Trust Corporation ("RTC") had been appointed conservator and Kim was removed as president. Despite an administrative review of this action favorable to Kim, the OTS issued a Prohibition Order which forever banned Kim from working in the American banking industry. This action was appealed to this court, and the prohibition order was vacated. *Kim v. Office of Thrift Supervision*, 40 F.3d 1050, 1055 (9th Cir.1994).

Kim, Yun Suk Seo, and Michael Kim filed suit in the United States District Court for the Central District of California against the Acting Director of the OTS. The case was assigned to District Judge David V. Kenyon. The suit sought removal of Delta's conservator on the basis that its appointment stemmed from the racial conspiracy among Jones, Henry and Miller.

On April 9, 1993, the district court granted plaintiffs leave to file a Second Amended Complaint and specifically found that the Delta directors had standing to bring suit. Subsequently, all parties stipulated to dismiss the suit to allow Delta to perfect its claim under the Federal Tort Claims Act ("FTCA") and, if necessary, refile the action.

On September 30, 1994, Delta and Kim, in his individual capacity and as a stockholder derivatively, re-filed the complaint against the United States and the OTS employees. The complaint alleged causes of action for violations of 42 U.S.C. § 1985(3), 42 U.S.C. § 1986, and 28 U.S.C. § 1346(b) based on the failure of the OTS to prevent the race-based conspiracy of its employees. On May 10, 1995, the district court granted defendants' 12(b)(1) motion to dismiss the causes of action that were based directly on § 1985(3) and § 1986, reasoning that the United States had not waived its sovereign immunity to suits brought under those provisions. However, the district court held that it had subject matter jurisdiction over the § 1346(b), FTCA, cause of action because the United States had waived its sovereign immunity to suits under that provision that were based on the combination of California's negligence per se law and § 1986. The district court also entered judgment in favor of defendants Jones and Henry on the ground that plaintiffs' claims against them were actually claims against the federal government. Plaintiffs subsequently dismissed the final individual defendant, Miller, on stipulation. The United States was the sole remaining defendant.

Judge Kenyon retired from the bench and the action was transferred to Judge William Matthew Byrne, Jr. On October 30, 1997, Judge Byrne granted the defendant's Motion for Partial Summary Judgment, holding that only the Federal Deposit Insurance Corporation ("FDIC"), as successor to the RTC, had standing to pursue the claims against the OTS on behalf of Delta. This ruling dismissed all of Delta's claims brought by Kim, in his capacity as a stockholder, officer, or director of Delta. The parties that remained were one plaintiff, Kim, in his individual capacity, and one defendant, the United States.

The remaining cause of action was a tort claim under the FTCA.

Judge Byrne granted defendant's Motion for Summary Judgment, holding that the district court did not have subject matter jurisdiction over the remaining claim because the United States had not waived its sovereign immunity. The district court subsequently denied Kim's motion to "amend the judgment" and this appeal was filed on September 29, 1998.

## II.

■ A grant of summary judgment is reviewed de novo. *Botosan v. Paul McNally Realty,* 216 F.3d 827, 830 (9th Cir.2000); *Weiner v. San Diego County,* 210 F.3d 1025, 1028 (9th Cir.2000). The grant of "partial" summary judgment is also reviewed de novo. *Adair v. City of Kirkland,* 185 F.3d 1055, 1059 (9th Cir. 1999).

The appellate court's review is governed by the same standard used by the trial court under Federal Rule of Civil Procedure 56(c). *Adcock v. Chrysler Corp.,* 166 F.3d 1290, 1292 (9th Cir.), *cert. denied,* 528 U.S. 816, 120 S.Ct. 55, 145 L.Ed.2d 48 (1999). The court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Lopez v. Smith,* 203 F.3d 1122, 1131 (9th Cir.2000) (en banc).

### A. Kim's Statutory Standing to Sue on Behalf of Delta Under FIRREA

On October 30, 1997, District Court Judge Byrne granted the defendant's Motion for Partial Summary Judgment, dismissing all claims brought by Delta and those brought by Kim, in his capacity as a stockholder, officer, or director of Delta.

Kim's claims brought in his individual capacity remained.

The RTC had been named the conservator and then the receiver of Delta. The district court reasoned that the clear language of the Financial Institution Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1821a, *et seq.,* transferred any rights that Kim once may have had as a stockholder, officer, and director of Delta to the RTC (and then to the FDIC). According to the district court, the rights transferred included the right to sue on behalf of Delta. It reasoned that "[t]he FDIC's position as receiver or conservator provides it with the exclusive right to file suit against those who injure the institution over which it exercises supervision."

■ Under FIRREA, FDIC-appointed conservators and receivers "shall ... by operation of law, succeed to—(i) all rights, titles, powers, and privileges of the insured depository institution." 12 U.S.C. § 1821(d)(2)(A). "It is hard to avoid the conclusion that § 1821(d)(2)(A)(i) places the FDIC in the shoes of the insolvent S & L, ... except where some provision in the extensive framework of FIRREA provides otherwise." *O'Melveny & Myers v. FDIC,* 512 U.S. 79, 86–87, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994). We have held that one of the rights transferred to the FDIC as receiver is the right to sue on behalf of the institution. *Pareto v. FDIC,* 139 F.3d 696, 700 (9th Cir.1998) ("Congress has transferred everything it could to the FDIC, and that includes a stockholder's right, power, or privilege to demand corporate action or to sue directors or others when action is not forthcoming.").

Despite such unequivocal language, plaintiffs make a simple plea to logic: the FDIC should not have the final say on whether it is in Delta's best interests to sue the OTS. The OTS and the FDIC are

interrelated agencies with overlapping personnel, structures, and responsibilities, and thus, according to plaintiffs, the FDIC faces a conflict of interests when it contemplates a suit against the OTS. Even though the FDIC, as receiver, is supposed to represent the best interest of Delta, the FDIC may be unwilling to bring a lawsuit against the OTS because of the close ties that bind the two agencies. We agree.

In *First Hartford Corp. Pension Plan & Trust v. United States*, 194 F.3d 1279 (Fed.Cir.1999), the Federal Circuit adopted a "conflict of interests" exception to the FIRREA which is similar to the exception urged by plaintiffs in this case. A large shareholder of a bank, which had been seized and placed under the receivership of the FDIC, brought suit against the United States alleging that the FDIC had breached contracts and committed unlawful takings in handling the troubled bank. *Id.* at 1284. The lower court—the Court of Federal Claims—had held that the shareholder lacked standing because only the FDIC, as receiver, had the authority to sue on the bank's behalf. *Id.* at 1294 (citing 42 Fed. Cl. 599, 612–16 (1998)). The Court of Federal Claims based its ruling, in part, on our court's holding in *Pareto.* 194 F.3d at 1294.

The Federal Circuit agreed that, "as a general proposition, the FDIC's statutory receivership authority includes the right to control the prosecution of legal claims on behalf of the insured depository institution now in its receivership." *First Hartford,* 194 F.3d at 1295. In ruling, however, that the lower court had erred, the Federal Circuit made an analogy between the lawsuit brought by the plaintiff and corporate derivative lawsuits. The point of a derivative lawsuit is to "place in the hands of the individual shareholder a means to protect the interests of the corporation from the misfeasance and malfeasance of faithless directors and managers." *Id.* (quoting *Kamen v. Kemper Fin. Servs.,* 500 U.S. 90, 95, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991)).

Continuing the analogy to derivative lawsuits, the court focused on conflicts of interest. "[T]he FDIC was asked to decide on behalf of the depository institution in receivership whether it should sue the federal government based upon a breach of contract, which, if proven, was caused by the FDIC itself." *Id.* The court implied that, just as directors can fall prey to "misfeasance" and "conflict[s] of interest," so too might the FDIC suffer from a conflict of interest. *Id.* Without inferring "any bad faith or improper motive on the part of the FDIC" the court held that because of the "manifest conflict of interest" presented, plaintiff had standing to sue derivatively. *Id.*

We note that the Federal Circuit expressly limited its holding in *First Hartford.* "[O]ur holding is limited to the situation here in which a government contractor with a putative claim of breach by a federal agency is being operated by that *very same federal agency,* as is the case in the receivership context." *Id.* (emphasis added) (further saying that the holding was applicable only "in a very narrow range of circumstances").

In the instant case, charges were brought against the OTS while the bank was in receivership under the RTC (which was succeeded by the FDIC). We hold that the fact that this case involves separate federal agencies does not distinguish it from *First Hartford* and we adopt the *First Hartford* exception. Based on the interrelatedness of these agencies, a "manifest conflict of interest" has arisen. These are interdependent entities with managerial and operational overlap and thus this lawsuit raises the same kind of conflict that was at issue in *First Hartford.*

The government responds that the FDIC is independent from the OTS and cites statutes and cases that supposedly attest to their independence from one another. We disagree. These are not two disengaged bodies on the opposite ends of an organizational chart; these are closely related entities. The Director of the OTS is, by statute, a member of the Board of Directors of the FDIC. 12 U.S.C. § 1812(a)(1)(B). Until the RTC ceased to exist, the Director of the OTS was also a member of the Thrift Depositor Protection Oversight Board, which had oversight over the RTC. 12 U.S.C. § 1441a(a)(3)(A). An employee of the OTS can simultaneously serve as a deputy or assistant to a member of the Board of Directors of the FDIC, and in such cases, he or she is considered an "employee of the FDIC" under Title 12. 12 U.S.C. § 1812(f)(2). The FDIC and OTS jointly publish regulations, issue reports, and conduct cooperative investigations. The OTS and RTC even share a common genesis, both having been created in FIRREA.

Furthermore, the two agencies play complementary roles in the process of bailing out failing thrifts. The OTS examines and supervises thrift institutions and can declare a bank insolvent or place it under the control of a conservator or receiver to ensure compliance with federal laws and regulations. 12 U.S.C. § 1464(d)(2)(B). The OTS may choose the FDIC to be the conservator or receiver in such cases. *See* 12 U.S.C. § 1464(d)(2)(E)(ii). Given the nature and extent of the relationship between the FDIC and the OTS, we conclude that the FDIC cannot be expected to objectively pursue lawsuits against the OTS, even when it is in the best interest of the failing bank to do so. The conflict of interest thus raised is significant and manifest. We do not suggest that the FDIC-as-receiver is faced with a disqualifying conflict every time a bank-in-receivership is asked to sue another federal agency; it is the nature of the OTS–FDIC relationship that raises the conflict here.

None of the cases cited by the defendant contradict the rule in *First Hartford*. *O'Melveny*, cited *supra*, stands for the proposition that the FDIC "steps into the shoes" and obtains the "rights" of the institution. 512 U.S. at 86, 114 S.Ct. 2048. The Court specifically held that because California state law imputes the knowledge of corporate officers to their corporation, the FDIC is treated no differently when it "steps into the shoes" of a failing bank; the knowledge possessed by the former bank directors is imputed to the FDIC. *Id.* The strongest proposition that can be drawn from this holding is that the FDIC cannot escape the limitations that a state imposes on other corporations just because the language of FIRREA is expansive. In fact, in *O'Melveny*, the Court explicitly noted that there might be exceptions to the absolute rule it put forth, "where some provision in the extensive framework of FIRREA provides otherwise." *Id.* at 87, 114 S.Ct. 2048.

The defendant also points to *Pareto*. In *Pareto*, we spoke with clarity, holding that, "Congress has transferred everything it could to the FDIC [through FIRREA], and that includes a stockholder's right, power, or privilege to demand corporate action or to sue directors or others when action is not forthcoming." 139 F.3d at 700. In the very next sentence, however, we noted that exceptions to this absolute rule were justified if the result would otherwise "be absurd or impracticable." *Id.* In *Pareto*, the result was not "absurd or impracticable" because the FDIC was qualified to decide, on behalf of the former stockholders, whether the bank should sue the directors for breaching the duty of loyalty and for misrepresenting information. *Id.* at 698. In the instant case, strict

adherence to an absolute rule would be at least impracticable, and arguably absurd. The FDIC was asked to demand a lawsuit, refuse this demand, and proceed derivatively with the lawsuit *against one of its closely-related, sister agencies.* This was one hat too many to be placed atop the head of the FDIC.

We hold, following *First Hartford* and consistent with *O'Melveny* and *Pareto,* that a common-sense, conflict of interest exception to the commands of FIRREA warrants granting standing to Kim as a representative of Delta in this case. However, because we hold in Part II(B) that Delta has no cause of action against the United States under the FTCA, although we reverse the Court's finding of insufficient standing, we need not remand.

## B. The Federal Tort Claims Act

 The Federal Tort Claims Act (FTCA) acts as a waiver of the United States' traditional sovereign immunity for certain torts committed by its employees. 28 U.S.C. §§ 1346(b), 2674. "The United States shall be liable ... in the same manner and to the same extent as a private individual under like circumstances...." 28 U.S.C. § 2674. Furthermore, "the district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission, ... if a private person[ ] would be liable to the claimant in accordance with the law of the place." 28 U.S.C. § 1346(b). The district court's determination of subject matter jurisdiction under the Federal Tort Claims Act ("FTCA") is reviewed *de novo. Brady v. United States,* 211 F.3d 499, 502 (9th Cir.) *cert. denied,* 531 U.S. 1037, 121 S.Ct. 627, 148 L.Ed.2d 536 (2000).

In their complaint, the plaintiffs' FTCA claim is based on the OTS' alleged violation of a federal civil rights statute, 42 U.S.C. § 1986. Section 1986 provides a cause of action against parties who fail to prevent conspiracies to violate the civil rights of other people. Specifically, any person who knows of a conspiracy to violate civil rights (as defined by 42 U.S.C. § 1985), and who has the power to prevent the rights violation but refuses or neglects to do so, is liable to the person injured. 42 U.S.C. § 1986.

 Plaintiffs suggest, without support, that an FTCA claim can be brought for violations of federal statutes that provide private *federal* causes of action, even if there is no analogous state law. This is not so. The Supreme Court has addressed a similar issue in regards to a "constitutional tort" claim brought against the government for alleged due process violations. *FDIC v. Meyer,* 510 U.S. 471, 475–79, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994). The Court held that "the United States simply has not rendered itself liable under [the FTCA] for constitutional tort claims," reasoning that they "have consistently held that [the FTCA's] reference to the 'law of the place' means law of the State-the source of substantive liability under the FTCA. By definition, federal law, not state law, provides the source of liability for a claim alleging the deprivation of a federal constitutional right." *Id.* at 478, 114 S.Ct. 996 (citations omitted). Similarly, liability under § 1986 arises from federal law, not state law and therefore cannot sustain a cause of action under the FTCA. *See Love v. United States,* 60 F.3d 642, 644 (9th Cir.1995) ("The breach of a duty created by federal law is not, by itself, actionable under the FTCA."); *U.S. Gold & Silver Invs. Inc. v. United States,* 885 F.2d 620, 621 (9th Cir.1989) (FTCA does not encompass a violation of the Lanham Act).

Because the FTCA action cannot be premised on a violation of § 1986, the plaintiffs must show that the conduct of the government violates some state law. The "law of the place" in § 1346(b) has been construed to refer to the law of the state where the act or omission occurred. *FDIC v. Meyer*, 510 U.S. 471, 477–78, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994). Thus, any duty that the United States owed to plaintiffs must be found in California state tort law. *See Lutz v. United States*, 685 F.2d 1178, 1184 (9th Cir.1982). The plaintiffs identify two such sources of state law: California civil rights law and California negligence per se law.

■ Plaintiffs argue generally that California civil rights laws forbid private parties from violating the civil rights of other parties, and that they specifically incorporate §§ 1985 and 1986 as state law causes of action. We reject both arguments. We reject the general argument because it is simply a recitation of broad statements of public policy supposedly embodied in California civil rights laws that do not, in and of themselves, provide a cause of action. Although it may be true as plaintiffs argue that the "legislative scheme underlying . . . the [California] Unruh Act and FEHA . . . generally forbid[s] the violation of another's civil rights under California Law," this statement of policy is insufficient to allow us to conclude that the Unruh Act and FEHA afford plaintiffs a cause of action in this case. The Unruh Act forbids business establishments to deny any person "full and equal accommodations, advantages, facilities, privileges, or services" on account of race, and has been limited to cases "where the plaintiff was in a relationship with the offending organization similar to that of the customer in the customer-proprietor relationship." *Strother v. Southern Cal. Permanente Med. Group*, 79 F.3d 859, 873–74 (9th Cir.1996). Some sections of FEHA focus on an employer's obligations toward employees and applicants only. *E.g.*, Cal. Govt.Code § 12940(j)(1). Other sections of FEHA prohibit the complicity or conspiracy to deny rights created by other civil rights laws. *E.g.*, *id.* at § 12948. None of these sections would grant a party a cause of action against a private defendant who committed acts like those allegedly committed by the United States in this case. Therefore, plaintiffs cannot sue the United States under the FTCA.

Nor are we persuaded by the argument that California Government Code § 50084 and California Civil Code § 52.1 (the Unruh Act) incorporate the Federal Civil Rights Acts and thereby support a finding that a cause of action exists against the federal government under the FTCA. The plaintiffs have not shown that these provisions provide causes of action against private entities who commit acts similar to those allegedly committed by the OTS in this case.

■ Plaintiffs also argue that the local law requirement of the FTCA is met through the state tort of negligence per se. California has codified its version of this rule. Cal. Evid.Code § 669.[1] The rule

---

1. This section provides, in pertinent part:
 (a) The failure of a person to exercise due care is presumed if:
 (1) He violated a statute, ordinance, or regulation of a public entity;
 (2) The violation proximately caused death or injury to person or property;

 (3) The death or injury resulted from an occurrence of the nature which the statute, ordinance, or regulation was designed to prevent; and
 (4) The person suffering the death or the injury to his person or property was one of the class of persons for whose protection

allows a plaintiff to prove tort liability based on the defendant's violation of a substantive statute. Appellants argue that if the forum state recognizes a claim for negligence per se for the violation of a federal statute, then the local law requirement is satisfied. The district court rejected this argument, because it "conflates two elements of tort law: duty and the standard of care." In other words, the negligence per se doctrine does not do away with the requirement in FTCA cases that the *duty* must be created by state law; it only establishes the standard to which the defendant's conduct must conform. *See Lutz v. United States,* 685 F.2d 1178, 1184–85 (9th Cir.1982) (where Montana law imposed a duty on private citizens to control their pets, member of air force was negligent per se when he breached the standard of care set forth in Base Regulation 125–5, which required the owner to maintain total control of the animal at all times). In other words, as the court explained in *Lutz,* a federal statute or regulation under which the employee acted only "becomes pertinent" in an FTCA action "when a state law duty is found to exist." *Id.* at 1184; *see also United Scottish Ins. Co. v. United States,* 614 F.2d 188, 198–99 (9th Cir.1979) (remanding to district court to determine whether state law would impose liability on a private person who undertakes so-called "good Samaritan" activities such as an inspection and certification of an aircraft, and thus whether the government could be held liable for negligence in the inspection of an aircraft done pursuant to federal regulations), *aff'd after remand,* 692 F.2d 1209 (9th Cir.1982), *rev'd on other grounds,* 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984) (claim barred under discretionary function exception).

■ We agree with the district court. To bring suit under the FTCA based on negligence per se, a duty must be identified, and this duty cannot spring from a federal law. The duty must arise from state statutory or decisional law, and must impose on the defendants a duty to refrain from committing the sort of wrong alleged here. *See Art Metal–U.S.A., Inc. v. United States,* 753 F.2d 1151, 1158 (D.C.Cir. 1985) ("The pertinent inquiry is whether the duties set forth in the federal law are analogous to those imposed under local tort law.") (citing *Indian Towing Co. v. United States,* 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955)).

Plaintiffs argue that a state law negligence per se action can be premised on the duty arising from the federal statute, 42 U.S.C. § 1986. Thus, they argue that a FTCA cause of action can be premised on a California negligence per se cause of action which is premised on the violation of the federal duty under § 1986. We disagree. This is an attempt to do an "end around" the local law requirements of the FTCA. If FTCA liability cannot be premised directly on alleged violations of § 1986, then neither can it be premised on a negligence per se cause of action which relies solely on federal law as the source of duty. Furthermore, even if we did allow such an "end around," plaintiffs have not cited any California cases which suggest that negligence per se actions can be premised on alleged violations of any of the federal civil rights statutes. Although FTCA violations can be premised on state negligence per se causes of action, *see Lutz,* 685 F.2d at 1185, the plaintiffs in this case have not shown that the United States was bound by a duty under California law to support such a theory.

the statute, ordinance, or regulation was adopted.

Cal. Evid.Code § 669(a).

Accordingly, we affirm the district court's order granting defendants' motion for summary judgment.

### III. Law of the Case

Judge Kenyon was originally assigned to a case involving this controversy, albeit between somewhat different parties, that was a predecessor to the instant case. On April 9, 1993, in granting plaintiffs' leave to file a second amended complaint in the earlier case, Judge Kenyon specifically ruled that, despite FIRREA, Delta's directors had standing to bring suit. After that lawsuit was voluntarily dismissed and refiled in its current form, Judge Kenyon, on May 15, 1995, specifically ruled that Delta and Kim had stated a valid claim for relief under the FTCA, basing his ruling on plaintiffs' negligence per se theory.

Judge Kenyon retired and the case was transferred to Judge Byrne. Upon two separate motions by the United States, Judge Byrne essentially overruled both of Judge Kenyon's prior rulings. Both times, plaintiffs argued to Judge Byrne that he was bound to leave unmodified Judge Kenyon's rulings as the law of the case. Plaintiffs now argue that Judge Byrne abused his discretion by ignoring the law of the case in issuing his rulings.

■■■ "We review for abuse of discretion a district judge's decision to reconsider an interlocutory order by another judge of the same court." *Amarel v. Connell,* 102 F.3d 1494, 1515 (9th Cir.1997).

We have held that:

While courts have some discretion not to apply the doctrine of law of the case, that discretion is limited. The prior decision should be followed unless: (1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or

(3) substantially different evidence was adduced at a subsequent trial.

*Jeffries v. Wood,* 114 F.3d 1484, 1489 (9th Cir.1997) (citations, footnotes, and internal quotation marks omitted).

■■■ Judge Byrne held that controlling authority had intervened that was unavailable to Judge Kenyon, and that would have altered the result Judge Kenyon had reached. Specifically, Judge Byrne cited *O'Melveny & Myers v. FDIC,* 512 U.S. at 86, 114 S.Ct. 2048, and *Love v. United States,* 60 F.3d 642 (9th Cir.1995). These cases call into question Judge Kenyon's earlier rulings.

Additionally, Judge Kenyon's FIRREA ruling came in an earlier case with different parties which was voluntarily dismissed without prejudice. Judge Byrne noted that this court has held that such a dismissal "leaves the parties as though no action had been brought." *Concha v. London,* 62 F.3d 1493, 1506 (9th Cir.1995). Plaintiffs respond that this dismissal should not affect the law of the case because the transactions and occurrences were identical in the two actions, and because the parties were only "technically" different. We disagree. *See Harbor Ins. Co. v. Essman,* 918 F.2d 734, 738 (8th Cir.1990) (original case was dismissed by stipulation and refiled but "[b]ecause the instant case is not the same case as the [prior action], the law of the case doctrine does not apply."); *Soc'y of Separationists, Inc. v. Herman,* 939 F.2d 1207, 1214 (5th Cir.1991) (the prior case "and the case before us are altogether separate proceedings, so law of the case is inapplicable.").

■■■ Additionally, whether or not a district court judge abuses his discretion by reversing an earlier judge's ruling, the Court of Appeals should review the merits of the ruling. *Levald, Inc. v. City of Palm*

*Desert,* 998 F.2d 680, 687 (9th Cir.1993) ("Levald's argument regarding the law of the case is also without merit. Regardless whether it was appropriate or prudent for Judge Waters to revisit the statute of limitations question when Judge Letts had already ruled on it, there is nothing that insulates either judge's conclusion from appellate review.")

Accordingly, we hold that Judge Byrne did not abuse his discretion in reaching a different conclusion than that in Judge Kenyon's earlier rulings.

AFFIRMED in part and REVERSED in part.