Jarvaughn B. ROGERS, et al. Plaintiffs

v.

The UNITED STATES of America Defendant

No. 4:01CV6PB.

United States District Court, N.D. Mississippi, Greenville Division.

Dec. 5, 2001.

Martin A. Kilpatrick, Greenville, MS, for plaintiffs.

Elaine Marzetta Lacy, U.S. Department of Justice, Civil Division, Torts Branch, Washington, DC, for defendant.

## MEMORANDUM OPINION

PEPPER, District Judge.

This cause is before the Court on the defendant's Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(1) for Lack of Subject Matter Jurisdiction. The Court, having considered the motion, the briefs and authorities cited, is prepared to rule. The Court finds as follows, to-wit:

## FACTUAL BACKGROUND

First Capital Home Improvements, Inc. ("First Capital"), along with two of its officers, Jarvaughan B. Rogers and Roy Lovelace, filed this action on March 7, 2001, under the Federal Tort Claims Act (FTCA)[1] alleging various theories of recovery against the United States arising out of the initiation of disciplinary sanctions against the plaintiffs by the Department of Housing and Urban Development ("HUD"). Specifically, the plaintiffs challenge the decision by HUD to issue a "Limited Denial of Participation" in HUD programs and, subsequently, to initiate de-

---

1. 28 U.S.C. §§ 1346, 2671 *et seq.*

barment proceedings against them as unfounded.

In 1994, Empire Funding Corporation ("Empire") began to purchase home improvement loans originated by First Capital. Empire was in the business of making HUD-guaranteed home improvement loans and a portion of the plaintiffs' work was financed by Empire and ultimately guaranteed by HUD. In 1997, an investigative report by a Houston, Texas, television station brought to light certain alleged abuses and unsavory practices in the home improvement industry involving HUD-guaranteed loans. As a result of the report, the plaintiffs claim that HUD, under some degree of congressional pressure, conducted several "field audits" of Texas lenders. According to First Capital, Empire was identified through this process as one of the lenders engaged in unscrupulous practices. Thereafter, the plaintiffs contend that, at the behest of Empire, First Capital was targeted by HUD for disciplinary action in order to "make an example of it" and allay political pressure.

On May 29, 1997, HUD issued the Limited Denial of Participation ("LDP") to First Capital and Lovelace for alleged false completion certificates in participation of Title I loan guarantees. The LDP operated to terminate the plaintiffs' participation in HUD's single-family insurance program for a period of 12 months. HUD, thereafter, notified the plaintiffs that the initiation of debarment proceedings against them was being considered. The proposed debarment would have served to enhance the initial sanctions by effecting a two-year ban on the plaintiffs from participating in the procurement of HUD-regulated transactions. Meanwhile, a suspension pending determination on the proposed debarment was effected on the plaintiffs. The grounds for the immediate suspension and proposed debarment included: (1) False certifications of completion; (2) Improperly entering into multiple separate loans for the same work financed by HUD-insured Title I loans; and (3) Forgery of the signature of the borrower on a HUD loan document.

Ultimately, the plaintiffs were exonerated from the alleged misconduct by the Board of Contract Appeals, U.S. Department of Housing and Urban Development. The plaintiffs contend that, as a result of the allegedly malicious and unfounded actions of HUD in issuing the LDP and then instituting debarment proceedings, substantial economic and other untold damage was suffered by them including interference with business relations, damage to reputation and interference with contracts. Although not contained in the Complaint, the plaintiffs have also interjected the allegation that the action on the part of HUD violated the due process clause of the Fifth Amendment.

The United States now seeks dismissal of the action pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction. In support of its motion, the government raises three principal contentions: (1) the government's actions constitute discretionary functions for which Congress has not waived immunity; (2) the plaintiffs have not alleged a cognizable tort theory under the FTCA; and (3) the plaintiffs' claims are time barred under the applicable statute of limitations. The Court will examine each in turn and address the plaintiffs' arguments throughout.

## LEGAL ANALYSIS

I. Sovereign Immunity and the Discretionary Function Exception

■ The United States as a sovereign nation is immune from suit except, of course, as the United States has consented to be sued. *McNeily v. U.S.*, 6 F.3d 343,

347 (5th Cir.1993). Under the auspices of the FTCA, Congress has waived the government's immunity and, thus, consented to suit with regard to certain claims against the United States and it's employees. 28 U.S.C. § 1346(b). Specifically, the United States can be liable in tort for any "negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *Id.*

Congress has seen fit, however, to limit the broad waiver of immunity granted under the FTCA by providing for several exceptions.[2] Arguably one of the most important, and most relevant for purposes of this action, is the "discretionary function" exception. This exception operates to preclude "...any claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). If a government action or decision falls within the discretionary exception, the district court lacks subject matter jurisdiction over the matter. *ALX El Dorado, Inc. v. Southwest Sav. & Loan Ass'n/FSLIC,* 36 F.3d 409, 410 n. 5 (5th Cir.1994).

The Supreme Court has set out a two-step inquiry to determine whether the discretionary function exception applies in a given case. *Berkovitz v. United States,* 486 U.S. 531, 536–37, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). The Court later refined the test in *United States v. Gaubert,*

499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991). Under the first prong, the government acts must be discretionary in nature; that is, the acts must involve "an element of judgment or choice" in order to be protected by the discretionary function exception. Acts involving mandatory compliance with "federal statute, regulation, or policy", do not satisfy the requirement of judgement or choice and, thus, do not fall within the exception. *Gaubert,* 499 U.S. at 322, 111 S.Ct. 1267 (quoting *Berkovitz,* 486 U.S. at 536, 108 S.Ct. 1954). The reason for this is obvious; in such instances the employee has "no rightful option but to adhere to the directive." *Id.*

Secondly, even if the acts of the government are found to involve judgement or choice, such action must be of the kind that the exception was designed to shield. *Id.* at 322–23, 111 S.Ct. 1267 (quoting *Berkovitz,* 486 U.S. at 537, 108 S.Ct. 1954). Thus, the inquiry must be informed by the policies which underlay the purpose of the exception. That purpose, as stated by the Supreme Court, is "to prevent judicial 'second guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Id.* at 323, 111 S.Ct. 1267. Thus, the exception, properly construed, protects only the government action "based on considerations of public policy." *Id.*

Turning to the instant case, the plaintiffs maintain that as a result of HUD's actions, they suffered a deluge of financial and other hardships. Moreover, the plaintiffs contend, such action on the part of HUD was precipitated by "willful misconduct" and, therefore, the United States may not seek refuge within the

---

2. These exceptions must be construed strictly in favor of the United States. *Atorie Air v.* *F.A.A.,* 942 F.2d 954, 958 (5th Cir.1991).

discretionary function exception on these particular facts. (Pl. Response at 11). The plaintiffs argument, however, is misguided. The Supreme Court stated in *Gaubert* that the subjective intent of the agent is irrelevant when evaluating the disputed government action. Indeed, "[t]he focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." *Gaubert,* 499 U.S. at 325, 111 S.Ct. 1267. Judicial inquiry into the motivation of government actions would entail a detailed examination of the mental processes of the decision-making which formed the basis for such decisions. Thus, the Court is not to inquire whether the decision or action actually was a result of a policy-driven determination. Such an inquiry constitutes precisely the "second guessing" of executive branch decisions which Congress sought to preclude. *Gaubert,* 499 U.S. at 325, 111 S.Ct. 1267; *see also* H.R.Rep. No. 77–2245, at 10 (1942) (discussing exception). Rather, the Court looks to whether such action was objectively "susceptible to a policy analysis" within the meaning of *Gaubert.*[3] For, "the exception's purpose compels dismissal of any claim whose ultimate resolution would require judicial scrutiny of an official's good faith or subjective decision-making." [4]

There is no dispute that the action upon which the plaintiffs' claims are based arise directly from the decision by HUD to suspend them from participation in HUD programs and by the subsequent initiation of debarment proceedings. The crux of the issue, therefore, is whether these decisions on the part of HUD, looked at objectively, constitute discretionary functions applying the two-part test, and not, as already indicated, whether HUD harbored improper motives in so doing.

3. In this sense, by employing the "susceptible to policy analysis" language, the two-step inquiry laid out in *Berkovitz* was somewhat expanded by the *Gaubert* Court, and the burden on the government made to be more easily shouldered. Indeed, the *Berkovitz* Court utilized no such language. Thus, since *Gaubert,* the second prong of the two part inquiry has shifted from a factual inquiry to an hypothetical one. *See also* Bruce A. Peterson & Mark E. Van Der Weide, *Susceptible to Faulty Analysis: United States v. Gaubert and the Resurrection of Federal Sovereign Immunity,* 72 Notre Dame L.Rev. 447 (1997) (discussing the modification of the inquiry by the *Gaubert* Court and its application in subsequent cases).

4. *Franklin Savings Corp. v. U.S.,* 180 F.3d 1124, 1127 (10th Cir.1999) (refusing to inquire into the subjective intent of government agency where it was alleged that agency intentionally effected a *de facto* liquidation of savings association under guise of conserving it). In concluding that the Supreme Court intended for its ruling in *Gaubert* to preclude courts from inquiring into the subjective intent of government agents in determining whether the discretionary function exception applies under the second prong of the *Berkovitz* test, the Tenth Circuit in *Franklin* drew an analogy between application of the discretionary function exception and application of the qualified immunity doctrine in other contexts. The court noted that in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), a case relied on by the plaintiffs in the instant case, the Supreme Court held that qualified immunity would henceforth be assessed by a purely objective standard. According to the Court, "substantial costs ... attend the litigation of the subjective good faith of government officials." *Harlow,* 457 U.S. at 816, 102 S.Ct. 2727. The Court further explained, "Judicial inquiry into subjective motivation therefore may entail broad-ranging discovery and the deposing of numerous persons, including an official's professional colleagues. Inquiries of this kind can be peculiarly disruptive of effective government." *Id.* at 816–17, 102 S.Ct. 2727. The Court thus concluded, "bare allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery." *Id.* at 817–18, 102 S.Ct. 2727.

There is little doubt that the government action in dispute in the instant case qualifies as discretionary function within the meaning of the exception. In addressing the precise issue now before this Court, the D.C. Circuit found that a decision by HUD to issue an LDP fell squarely within the discretionary function exception under the FTCA. *Sloan v. United States Department of Housing and Urban Development*, 236 F.3d 756 (D.C.Cir.2001). In *Sloan*, the plaintiffs, like the plaintiffs in this case, challenged the decision by HUD to issue an LDP against them. In applying the two-part test, the court noted that "the decision to suspend is plainly discretionary in nature", and, therefore, involved "an element of judgment or choice". *Sloan*, 236 F.3d at 760. The applicable regulation governing such action confirms the finding:

> In order to protect the public interest, it is the policy of the Federal Government to conduct business only with responsible persons. Debarment and suspension are discretionary actions that, taken in accordance with Executive Order 12549 and these regulations, are appropriate means to implement this policy.

24 C.F.R. § 24.115(a). Moreover, 24 C.F.R. § 24.700 expressly states, "the decision to order a limited denial of participation shall be discretionary and in the best interest of the Government." By the express terms of the applicable regulations, therefore, such action is clearly discretionary.

According to the plaintiffs, however, "HUD must first have made a good faith determination that the Plaintiffs were irresponsible before they were entitled to exercises discretionary authority." (Pl. Response at 12). The plaintiffs are correct in asserting that HUD regulations require that certain conditions be satisfied before a suspension may issue. For instance, 24

C.F.R. § 24.400(b) states that suspension may only be imposed where there exists "adequate evidence" of wrongdoing and where "immediate action is necessary to protect the public interest." As the *Sloan* court noted, however, this requirement "does not convert the decision into a nondiscretionary act." *Sloan*, 236 F.3d at 760. Indeed, 24 C.F.R. § 24.400(c) sets out factors for the agency to consider in assessing the adequacy of the evidence. The consideration of these factors is marked to a significant degree by, "elements of choice and judgment." Thus, the plaintiffs have failed to recognize that the decision as to whether First Capital was "irresponsible" was itself vested with substantial discretion. As the Fifth Circuit has stated, the first step of the two-step test is satisfied where statutory provisions leave enforcement and regulatory decisions to the discretion of federal regulators. *McNeily v. United States*, 6 F.3d 343, 348 (5th Cir. 1993).

Step two of the inquiry is also satisfied. "When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Gaubert*, 499 U.S. at 324, 111 S.Ct. 1267. Even if the government did not enjoy such a presumption, however, looking to the plain language of the relevant regulations, it is clear that the decisions to issue an LDP and later initiate debarment proceedings are "susceptible to policy analysis" within the meaning of *Gaubert.* Several HUD regulations bear this conclusion out by holding policy up as the prominent purpose and consideration in issuing an LDP:

> The official must determine, for example, whether the contractor's violations are "so serious as to effect the integrity

of an agency program," 24 C.F.R. § 24.305(b), and whether "[i]mmediate action is necessary to protect the public interest," 24 C.F.R. § 24.400. *See also* 24 C.F.R. § 24.115 (Stating that "[i]n order to protect public interest, it is the policy of the Federal Government to conduct business only with responsible persons," and that debarment and suspension "are appropriate means to implement this policy").

*Sloan*, 236 F.3d at 761. It is well established that a complaint cannot survive dismissal unless facts are alleged which would support a finding that the challenged actions are not the kind of conduct grounded in the policy of the regulatory regime. *Gaubert*, 499 U.S. at 324–25, 111 S.Ct. 1267; *ALX El Dorado, Inc. v. Southwest Sav. and Loan Association/FSLIC*, 36 F.3d 409, 411 (5th Cir.1994). The kind of conduct at issue here is clearly so grounded.

In short, viewed objectively, the actions of HUD fall within the scope of a discretionary function.[5] As already discussed, an allegation of subjective bad faith will not save the plaintiffs' claims where the actions at issue fall within the exception when objectively viewed. Such an allegation would still require the Court to "permit discovery and make factual findings" regarding the state of mind and intent of HUD officials in issuing the LDP and initiating debarment proceedings. *Franklin Savings Corp.*, 180 F.3d at 1137. "This the discretionary function exception will not allow." *Id.*

**II. Constitutional Claims Under the FTCA**

■■■■ Finally, the plaintiffs' argue that the action by HUD to "suspend and disbar" the plaintiffs violated their due process rights secured by the Fifth Amendment. (Pl. Response at 14).[6] As a result, the plaintiffs contend, no discretion existed for the action at issue. However, as one court within this circuit noted:

> Plaintiffs could argue that the Constitution, albeit indirectly and abstractly, controls the conduct or decisions of an officer in every circumstance.... If successful, these arguments would transform the discretionary function shield from steel to paper.

*McElroy v. United States*, 861 F.Supp. 585, 593 (W.D.Tex.1994). Indeed, to defeat the protection of the discretionary function, plaintiffs would need only to simply allege some constitutional violation alongside their other allegations, no matter how vague or abstract. Allowing such a practice, however, would obfuscate the will of the legislature in creating the protection in the first place. Thus, "[T]he statutory or constitutional mandate that eliminates discretion must be specific and intelligible..." *McElroy*, 861 F.Supp. at 593. The purpose of this requirement is so that the official knows or should know that discretion is lost "when the particular circumstances arise which the mandate controls." *Id.* Consequently, if a specific and intelligible constitutional mandate exists that is related to the alleged torts of the government agency, the Court will conclude that such action occurred during the performance of a function divested of discretion.

---

**5.** Moreover, to the extent that the plaintiffs allege interference with contract rights, either existing or prospective, such claims are excluded from the FTCA's waiver of immunity under § 2680(h) as "claims arising out of ... interference with contract rights..." 28 U.S.C. § 2680(h). *See Art Metal–USA, Inc. v.*

*United States*, 753 F.2d 1151, 1155 (D.C.Cir. 1985); *Crenshaw v. United States*, 959 F.Supp. 399, 403 (S.D.Tex.1997).

**6.** Notably, no such allegation appears in the Complaint.

In such an instance, therefore, the discretionary function exception will be inapplicable. *Id. See also Berkovitz*, 486 U.S. at 536–37, 108 S.Ct. 1954.

The Court finds that no such "specific and intelligible" constitutional mandate exists with regard to the action complained of in this case; namely, the issuance of an LDP and initiation of debarment proceedings on the part of HUD. In so holding, the Court is in line with the decisions of other courts reviewing the precise issue. *See, e.g., Sloan v. United States*, 236 F.3d 756 (D.C.Cir.2001) (holding issuance of LDP to be a discretionary function and, therefore, recognizing no specific mandate, by regulation or otherwise, which renders the exception inapplicable).

 Moreover, the plaintiffs have failed to allege a cognizable tort actionable under the FTCA with regard to their Fifth Amendment due process claim. To reiterate, the FTCA waives immunity in tort for any "negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment, under circumstances where the United States, *if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.*" 28 U.S.C. § 1346(b) (emphasis added). In other words, only if Mississippi law would afford the plaintiffs a cause of action against a private individual for the same conduct is that cause of action cognizable under the FTCA. As the Fifth Circuit has explained:

> While as a matter of abstract linguistics the phrase "law of the place" might be thought to include generally applicable federal law, it has long been settled that it does not, and the liability of the United States under the [FTCA] arises only when the law of the state would impose it. Thus, even a violation of the United States Constitution, actionable under *Bi-*

*vens*, is not within the FTCA unless the complained of conduct is actionable under the local law of the state where it occurred.

*Johnson v. Sawyer*, 47 F.3d 716, 727 (5th Cir.1995) (internal citations omitted). *See also FDIC v. Meyer*, 510 U.S. 471, 478, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994) ("[T]he United States simply has not rendered itself liable under [the FTCA] for constitutional tort claims"); *Delta Savings Bank v. United States*, 265 F.3d 1017, 1026 (9th Cir.2001) ("The duty must arise from state statutory or decisional law" and cannot spring from federal law); *Chen v. United States*, 854 F.2d 622, 626 (2d Cir.1988) ("The FTCA's law of the place requirement is not satisfied by direct violations of the Federal Constitution").

 The only way the plaintiffs' constitutional claim could survive, therefore, and be actionable under the FTCA, is if Mississippi law would permit such a cause of action against a private individual. The source of liability for a claim based on the due process clause of the Fifth Amendment, however, by definition, is provided by federal law. *Meyer*, 510 U.S. at 478, 114 S.Ct. 996. Indeed, any claim "alleging the deprivation of a constitutional right" necessarily finds its source in federal law and not state law. *Id.* Besides being purely a creation of federal law, duties owed under the due process clause are owed on the part of the government "*as a government.*" *Art Metal–USA, Inc. v. United States*, 753 F.2d 1151, 1159 (D.C.Cir.1985) (emphasis in original). First Capital has cited no theory upon which Mississippi would impose liability under local law on a private person based on the breach of parallel duties owed by the government pursuant to the Fifth Amendment. *See Brown v. United States*, 653 F.2d 196 (5th Cir.1981); *Art Metal–USA, Inc.*, 753 F.2d at 1159. *See also Meyer*, 510 U.S. at 477–

78, 114 S.Ct. 996 (due process claim not cognizable under FTCA).

Having concluded that Congress has not waived immunity with regard to the government conduct at issue, nor for the constitutional claim which the plaintiffs' have advanced, the Court does not reach the issue of whether this action was timely filed under the applicable statute of limitations. Based on the foregoing analysis, the Court finds that it is without subject matter jurisdiction. Consequently, the government's Motion to Dismiss for Lack of Subject Matter Jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) is granted.

## CONCLUSION

After careful consideration, the Court finds that the defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction is well taken and should be granted. A separate order in accordance with this opinion will be so entered.